THE MAJESTIC.

POTTER et al. v. THE MAJESTIC.

(Circuit Court of Appeals, Second Circuit. March 12, 1894.)

No. 65.

1. SHIPPING—CONSTRUCTION OF CONTRACT OF CARRIAGE—WHAT LAW GOVERNS.
   A written agreement, executed and delivered in England, whereby an English corporation agrees to transport a citizen of the United States from England to this country, is to be construed according to the English law.

2. CARRIERS OF PASSENGERS—LIMITATION OF LIABILITY—PERILS OF THE SEA.
   A steamship passenger ticket contained an agreement to carry a passenger and a certain quantity of luggage, and included several notices and directions, but did not refer to any other conditions. At the bottom were the words "See back," and on the back of the ticket was a statement that the ticket was subject to several conditions, among which was one attempting to relieve the carrier from liability for perils of the sea. *Held*, that this condition was not binding, since it was an attempt to limit the carrier's common-law liability by a mere notice, not incorporated into the contract of carriage.

3. SAME—LIABILITY FOR PASSENGER'S BAGGAGE.
   A condition on the back of such ticket limiting the carrier's liability for baggage to £10, unless extra payment is made, is binding on the passenger, where he receives the ticket in time to examine it thoroughly

before embarking, since the extent of a carrier's liability for baggage, being not definitely fixed by the common law, is subject to reasonable regulation by the carrier.

Libel by Grace Howard Potter and others against the steamship Majestic for breach of a contract of carriage. Libelants obtained a decree. The claimant, the Oceanic Steam Navigation Company, appeals. Modified.

Appeal by the Oceanic Steam Navigation Company, claimant of the steamship Majestic, from a decree of the district court for the southern district of New York in favor of the libelants. 56 Fed. 244. The libel was filed to recover for an injury to the contents of certain trunks on a voyage from Liverpool to New York.

Everett T. Wheeler, for appellant.

Willard Parker Butler, for appellees.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The two ladies and their maid who are the three libelants took passage on January 20, 1892, at Liverpool for New York, on board the steamer Majestic. The vessel arrived in New York on January 28th. The contents of their trunks were found to have been saturated with salt water, and to have been damaged to the amount of $2,828.50. The baggage was stowed in compartment No. 3 of the orlop deck, where the mails were also stowed. This compartment is about 25 feet in length, has watertight bulkheads at each end, and is ordinarily a safe and convenient place for the baggage of passengers. On the morning of January 25, 1892, there was a pretty rough sea, and from 7 to 8 o'clock a. m. the vessel passed through a quantity of wreckage, apparently broken planks, and about 8 o'clock a. m. it was found that the after port in No. 3 had been broken, and that a large quantity of water had entered and damaged the mails and luggage. There were three port holes on each side of the compartment, which were closed in the usual way, with thick glass, and an iron cover or "dummy," screwed up tightly. The glass was broken in many fragments, and the iron dummy was forced from its hinges, and turned back,—an accident which could not have been caused by the sea alone. The ports are examined at the commencement of the voyage in Liverpool. The chief officer of the ship was at this compartment the day after the vessel left Queenstown. It was the custom to inspect the baggage rooms after heavy weather, and accordingly the chief officer opened the door on the morning of January 25th, and discovered, by the wash of water, that an accident and injury had taken place. The facts that the glass was splintered into many fragments, and that the iron dummy was forced from the hinges, and thrown backward, show that the accident must have been caused by a violent blow coming from the ocean. It is reasonable to infer that it was caused by an apparent and adequate cause, rather than by one which rests entirely upon surmise, and we are therefore led to conclude that a blow from one of the floating planks inflicted the injury. The district judge was of opinion, assuming that the acci-

dent was caused by wreckage, that the ship must be deemed guilty of negligence in not checking her speed when passing through material capable of inflicting such damage. If such an injury could have been anticipated, the speed should have been slackened, but it is apparent that the injury was of an extraordinary character, and that the propriety of taking precautions to avoid it would not naturally have occurred to the mind. It was an unanticipated peril of the sea.

The questions in the case which are of general importance arise upon alleged limitations of the carrier's liability, which are expressed in the notice printed upon the back of the libelant's ticket. One ticket was purchased in England, and was issued to the three libelants. It was a maritime contract, for the performance of which the ship became liable, entered into by a common carrier by sea, the terms of which were expressed in writing. The portion relating to the contract was headed "Cabin Passenger's Contract Ticket." Then follow the words: "These directions and the notices to passengers below form part of, and must appear on, each contract ticket." Five "directions" which are required by the British merchant shipping act are then inserted. The undertaking or agreement of the steamship company is next printed. The part of this agreement which is important to this case is as follows:

"In consideration of the sum of £124 10, I hereby agree with the person named in the margin hereof that such person shall be provided with first-class cabin passage in the abovenamed British steamship, to sail from the port of Liverpool for the port of New York, in North America, with not less than twenty cubical feet for luggage for each person; * * * and I further engage to land the person aforesaid with their luggage at the last-mentioned port, free of charge beyond the passage money aforesaid. For and on behalf of the Oceanic Steam Navigation Company, Limited, of Great Britain. Thomas Henry Ismay,
"Per R. Martckellell."

The last name was written. Then follow two notices to cabin passengers, and a caution in regard to the care of their baggage and valuables. At the bottom of the face of the ticket are the words, in conspicuous, black-faced type, "See back." Upon the back of the ticket are the words: "Notice to Passengers. This contract is made subject to the following conditions." Seven important conditions are then stated. The third, fourth, and seventh are as follows:

"(3) Neither the shipowner nor the passage broker or agent is responsible for loss of or injury to the passenger or his luggage or personal effects, or delay on the voyage, arising from steam, latent defects in the steamer, her machinery, gear, or fittings, or from act of God, queen's enemies, perils of the sea or rivers, restraints of princes, rulers, and peoples, barratry or negligence in navigation, of the steamer or of any other vessel. (4) Neither the shipowner nor the passage broker or agent is in any case liable for loss of or injury to or delay in delivery of luggage or personal effects of the passenger beyond the amount of £10, unless the value of the same in excess of that sum be declared at or before the issue of this contract ticket, and freight at current rates for every kind of property (except pictures, statuary, and valuables of any description, upon which one per cent. will be charged) is paid."
"(7) All questions arising on this ticket shall be decided according to English law, with reference to which this contract is made."

The signature of Thomas Bruce Ismay, for the steam company, is printed. The father of the two young ladies who were passengers bought the ticket. Neither he nor either of the three passengers read it, or knew its contents. The father and daughters had abundant opportunity to do so. The steamship company claims that, under the third condition, it is not liable for injury to any passenger's baggage which arises from perils of the sea or from negligence in navigation of the steamer or any other vessel, and that, under the fourth condition, the amount of liability to a passenger for injury to his baggage is limited to £10, unless the value of the same in excess of that sum was declared when or before the ticket was issued and freight was paid. No declaration was made in their case. The seventh condition specifies that the contract is an English one, and has particular reference to the limitation in regard to liability for negligence.

The contract was made in London or in Liverpool, where the shipowner had a place of business, between a British corporation, which was the shipowner, and a citizen of the United States. The contract was for the transportation, upon the high seas, of passengers and their baggage, from the city of Liverpool to the city of New York; and, if the statement that it was made with reference to English law had been omitted, nothing in the contract would have indicated an intent that it was to be controlled by the law of the United States. Under such circumstances, it was an English contract, and governed by the law of England. "The general rule that the nature, the obligation, and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties, at the time of making it, have some other law in view, requires a contract of affreightment, made in one country, between citizens or residents thereof, and the performance of which begins there, to be governed by the law of that country, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other country." Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469; Fonseca v. Steamship Co., 153 Mass. 553, 27 N. E. 665.

It is well known, and in the Liverpool & G. W. Steam Co. Case the supreme court has declared, that, by the law of England, common carriers, by land or sea, except so far as they are controlled by the provisions of the railway and canal traffic act of 1854, are permitted to exempt themselves, by express contract, from responsibility for losses occasioned by the negligence of their servants. A like exemption from other portions of their common-law responsibility can also be made by special contract. As negligence has been found not to have existed, it will not be necessary to dwell longer upon the part of the third condition which purports to relieve the carrier from responsibility occasioned by its servant's negligence.

In the absence of a special contract, the common carrier of merchandise was only exempted from liability for those losses which were occasioned by the act of God or the public enemy. York Co. v. Railroad Co., 3 Wall. 107. The third condition extends these two exemptions to those occasioned by divers other causes, one of them

being "the perils of the sea." While it has been thought that the term "perils of the sea" had the same and no larger meaning than losses or injuries "by the act of God," it is now generally considered that it has a broader signification, and includes calamities which were not caused by a violence or convulsion of nature, such as lightning, flood, or tempest. In Parsons on Shipping, (volume 1, p. 255), the learned author states what he conceives to be the proper definition, and the reason for it, as follows:

"The 'act of God' is limited to causes in which no man has any agency whatever, because it was never intended to raise in the case of the common carrier the dangerous and difficult question whether he had any agency in causing the loss, for, if this were possible, he should be held."

In this case the district court thought that the injury was one from which the steamship could have turned aside. It certainly was not a peril of the same class as lightning or hurricane, from which there is no escape, and to call it an "act of God" would be a strained use of language. When, therefore, the third condition excludes from the carrier's liability losses from those perils of the sea which are not included in those occasioned by the act of God, it excluded what was included upon the face of the contract.

The next question is whether this limitation is one which was entered into by express contract, or is a mere notice by the carrier of a desired limitation. The reported English cases do not contain a construction of this ticket, or of a ticket of the same character. There are cases which construe the effect of conditions which the passenger has admitted by his signature (Peninsular & Oriental Steam Nav. Co. v. Shand, 3 Moore, P. C. [N. S.] 272), and also the legal meaning of a railroad pasteboard ticket or check, one side of which contains merely the names of the towns where the passenger's journey begins and ends, and the other side containing limitations upon the carrier's responsibility (Henderson v. Stevenson, L. R. 2 H. L. Sc. 470). Other cases construe the meaning of checks or vouchers for the return of parcels deposited in a railway office for temporary safe-keeping (Parker v. Railway Co., 2 C. P. Div. 416; Harris v. Railway Co., 1 Q. B. Div. 515), and others construe the meaning of conditions contained upon the face of a railway ticket, or in a book of railway coupon tickets (Zugz v. Railway Co., 4 Q. B. 539; Burke v. Railway Co., 5 C. P. Div. 1); but no case declares the legal construction which the English courts place upon important conditions attached to a contract which expresses, in legal phrase, the undertaking of a carrier by sea to transport a passenger and his baggage from one point to another, the conditions not being referred to in the body of the contract, but referred to upon the bottom of the face of the paper by the words "See back," and indorsed upon the back of the ticket, the signature or assent of the passenger not appearing upon the paper. The general principle which controlled the various cases, and which is plainly stated in the discussions of the judge in Henderson v. Stevenson, supra, is that courts should insist upon the importance of a distinct declaration or reference by the carrier in that part of the ticket which contains his contract with respect to limitations in derogation of his common-law liability; so that it may

manifestly appear that such limitations could not have been misunderstood and were accepted by the passenger. These exemptions must be directly stated, or the assent of the passenger will not be inferred. Attempts, "by indirection," to obtain an assent to exemptions, will not, unless the attempt is positively sanctioned by the passenger, receive the favor of courts. The principle is the one which is the foundation of the important decision in Railroad Co. v. Manufacturing Co., 16 Wall. 318. But there is a distinction between regulations for the conduct of business and limitations upon common-law obligations, and this rule is not intended to be so stringent as to prevent the carrier from prescribing reasonable regulations for the conduct of his business, not in derogation of his responsibility at common law, for the purpose of preventing imposition upon him, and of establishing proper charges adequate to the extent of the risks to be undertaken, provided such regulations are brought to the knowledge of the person who intrusts merchandise to the carrier. York Co. v. Railroad Co., 3 Wall. 107.

Turning now to the ticket which was issued to the libelants, we find that certain directions are expressed in the body of the ticket, which, with two notices to passengers, are expressly said to form part of the contract, and no other condition is referred to in the body of the agreement. At the foot of the page, by the words "See back," the purchaser is referred, under the heading "Notice to Passengers," to important modifications of the carrier's liability as expressed in the face of the contract. If these conditions are to be construed as a part of the express contract, they make a clumsily and inartificially drawn document. They are of such a vital character that they should have been embodied in the contract, or unmistakably made a part of it. There is no reason why agreements of this nature should not be so distinctly and definitely stated or referred to in the body of the contract as to remove all uncertainty on the part of courts, or cause of complaint on the part of the passenger. The modifications in the third condition of the agreement entered into upon the face of the ticket, and which did not allude to these proposed modifications, are so great that they cannot be considered to have been made by special contract, in the absence of evidence of positive assent upon the part of the purchaser of the ticket or of the passenger.

The regulation in regard to a limitation of liability for the value of baggage of which the carrier is not informed, and the amount of a risk for which he is not paid, rests upon a different principle. The common-law liability of common carriers for the safety of baggage of travelers is not exactly defined, but it is not unlimited. The carrier is not to be called upon to take an unusual quantity of trunks, as the baggage of a single traveler, nor is he under obligations to pay large sums for the value of articles which are in excess of a traveler's ordinary wants. The rule which the common law laid down upon this subject is well understood. "The contract to carry the person only implies an undertaking to transport such a limited quantity of articles as are ordinarily taken by travelers for their personal use and convenience; such quantity depending, of

course, upon the station of the party, the object and length of his journey, and many other considerations." Railroad Co. v. Swift, 12 Wall. 272. And therefore, as this obligation on the part of the carrier is not unlimited, but is at common law not exactly defined, the carrier has a right, "by reasonable regulations, of which the passenger has knowledge," to define and make certain to both parties the extent of an implied undertaking to carry baggage (Railroad Co. v. Fraloff, 100 U. S. 29), and of an express undertaking, where the contract includes baggage by name; for an express contract which simply mentions baggage would not be construed to mean baggage unlimited in quantity or in value. By the contract in question the amount of space which the baggage could occupy was expressly provided for. The power of the carrier to define by regulations, communicated to the traveler, the amount of his pecuniary liability for baggage, has been well understood in the law of England and in this country. "It is undoubtedly competent for carriers of passengers by specific regulations, distinctly brought to the knowledge of the passenger, which are reasonable in their character, and not inconsistent with any statute or their duty to the public, to protect themselves against liability, as insurers, for baggage not exceeding a fixed amount in value, except upon additional compensation, proportioned to the risk." Railroad Co. v. Fraloff, supra. The regulations or the notices upon the tickets or contracts which bring this class of limitations home to the knowledge of the passenger are of a very different character from the notices of which we have been speaking, and which limit or attempt to annihilate the common-law responsibility of a carrier. This class of regulations is intended to make certain what is uncertain, to define what is otherwise indefinite, to prevent mistakes, complaint, and litigation, and to promote fairness of dealing. The ticket was purchased by the father of the young lady passengers, a gentleman of large business experience, who had frequently used similar tickets. He kept the ticket for a while in his office in London, but did not read it, and had never read the tickets which he had purchased for his own use. He had abundant opportunity to read it, and to make himself familiar with the reasonable and ordinarily well-understood regulations of carriers by land or sea in regard to baggage. The regulation was distinctly brought to the knowledge of Mr. Potter by his reception of the ticket (which was far more than the ordinary railroad check, indicating the two points between which the passenger is to be carried), in ample time to make himself acquainted with its regulations. He was not hurried on board with no opportunity to know the rules of the company, and it cannot be safely asserted that with adequate means of knowledge placed in his hands, and with ample opportunity to possess himself of the information which the carrier gave him, knowledge of the regulations was not brought home to him. The decree of the district court is modified, with costs of this court, and the cause is remanded to the district court, with instructions to enter a decree in favor of each libelant for the sum of $43.67, and interest from January 25, 1892, and their costs in the district court.