## THE CARIB PRINCE.

WUPPERMAN v. THE CARIB PRINCE. MIDDLETON et al. v. SAME. CADENAS et al. v. SAME. GILLESPIE et al. v. SAME.

(District Court, E. D. New York. October 4, 1894.)

1. CONFLICT OF LAWS—CONSTRUCTION OF BILL OF LADING.
    A bill of lading of goods to be carried in an English ship, signed in an English port, must be construed according to the law of England.

2. BILL OF LADING—EXEMPTIONS FROM LIABILITY—ENGLISH LAW.
    Under the law of England, a provision in a bill of lading exempting the shipowner from liability for damage caused by a latent defect covers

damages from a defective rivet in the bulkhead side of a water tank, where, the ship being a new one, the tank had been tested by hammer and water pressure, and the defect was where no external examination would have discovered it.

Actions by Josephine W. Wupperman, Clifford E. Middleton and others, Manuel Cadenas and another, and William Gillespie and others against the steamship Carib Prince for damages to merchandise. The several libels were dismissed.

George A. Black, for libelants.
Convers & Kirlin, for claimants.

BENEDICT, District Judge. These actions are brought to recover of the steamship Carib Prince for damage done to merchandise forming part of the cargo of that vessel on a voyage from Grenada to New York. The vessel was constructed with a water tank of iron in her peak, one side of which was formed by a bulkhead. This tank, when she sailed from Grenada, was empty, but during the voyage from Grenada to New York it was filled with water one afternoon, in order to trim the vessel; and the next morning, much of the water having gone from the tank, an investigation showed that the head had come off from one of the rivets riveting the bulkhead side of the tank, leaving a hole through which water had poured upon the libelants' merchandise, stowed near the bulkhead. The evidence in respect to the rivet has led me to the conclusion that the cause of the accident was a defect in the rivet, arising from the fact that the quality of the iron had been injured by too much hammering at the time it was annealing, so that it became brittle and weak. This defect could not be seen. The broken rivet was found on one of the bags of cargo, and showed that it had broken off in the countersunk part of the rivet, below the head, so that, while the rivet remained in place, no external examination would have discovered the defect. This defective rivet was, in my opinion, the cause of the accident. The condition of the rivet rendered it unfit to sustain the reasonable pressure caused by filling the tank with water while at sea, and the vessel consequently was unseaworthy in that respect. The evidence shows that the vessel was a new vessel, built by builders of the highest class, and all reasonable effort was made to secure a proper riveting of the tank. After construction the tank was tested by a hammer and by water pressure, and it was found to be tight and strong enough to sustain the weight of water when not in motion. When the tank was filled with water while the ship was in motion, the rivet in question proved insufficient, owing, as already stated, to the fact that the iron had lost its strength in the process of being hammered while it was annealing, and it gave way, causing the damage sued for.

If diligence on the part of the shipowner to provide a seaworthy ship, and a justifiable belief on his part that his ship was seaworthy, could avail to relieve him from his warranty of seaworthiness, he could be relieved upon the proofs in the case; but the rule has been declared that if the unseaworthy condition arose from a defective

construction, although latent and unknown to the owner, he is not excused. The shipowner must show affirmatively that his ship was seaworthy at the beginning of the voyage.

The question then arises whether this obligation on the part of the shipowner has been qualified by the clause in the bill of lading which exempts the shipowner from damage caused by a latent defect, which is this case. This was an English ship. The contract was signed in a port governed by English law, and it has been held in this circuit that such a case is to be governed by the law of the place where the contract was made. It was a British vessel, governed by the laws of England. Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469; The Majestic, 9 C. C. A. 161, 60 Fed. 624; Bank of Edgefield v. Farmers' Co-op. Manuf'g Co., 2 U. S. App. 282, 295, 2 C. C. A. 637, 52 Fed. 98. The law of England, as declared in the case of The Laertes, 12 Prob. Div. 187, is to the effect that by the laws of England such an exception as that contained in the bill of lading sued on, if it does not abrogate, at all events limits, the warranty which the law would otherwise imply, that the ship was seaworthy at the beginning of the voyage, and exempts the ship if due diligence is exercised by the shipowner. Applying that law to this case, it follows, from the fact that the weak condition of the iron rivet could not be discovered by the exercise of due diligence, that the ship cannot be held liable for the injury to the libelants' cargo, because the danger arose from a latent defect in the rivet which gave way, within the exception in the bill of lading under which the merchandise was carried. Upon this ground the libels are dismissed, and with costs.