## CALDERON v. ATLAS STEAMSHIP CO., Limited.

(District Court, S. D. New York. December 3, 1894.)

CARRIAGE OF GOODS—OVERCARRIAGE — DEVIATION — RESHIPMENT AND LOSS— "PROPER DELIVERY"—HARTER ACT—BILL OF LADING—STIPULATION DOES NOT EXCUSE NEGLIGENCE—LIMITATION $100 PER PACKAGE VALID.

The defendant's steamer A., which was accustomed to touch at several ports of call in South America, received on board, a few hours before sailing from New York, 29 packages for Savanilla, the second port of call, and they were placed in the bottom of the last hatch filled. On arrival at S. other goods were discharged there, but not the libelant's goods, which were inadvertently omitted, as found on the following day, after the vessel had left S. It not being convenient to return, or possible to forward the goods from the subsequent ports, they were brought back by the same vessel to New York, and there immediately reshipped for Savanilla by another steamer, which was totally lost on her way out. The bill of lading, by stipulations on the back, referred to in the body, provided that if goods "cannot be found" during the steamer's stay, they are to be forwarded when found, at company's expense; also, carrier not liable for "goods of any description which are above the value of $100 per package, unless value expressed in agreement made." *Held*: (1) That the stipulations indorsed, so far as reasonable and valid, were binding on the libelant; (2) that "proper delivery" of the goods included timely delivery; (3) that the provisions of the Harter act (2 Supp. Rev. St. 81) prohibit the insertion in the bill of lading of any exemption from liability for failure in the "proper delivery" of goods; (4) that the parties cannot evade this act by inserting stipulations determining what shall constitute a "proper delivery," any further than shall appear reasonable under the circumstances proved, and no stipulation that shall cover negligence either in receiving and stowing the goods, or in making a proper search for them at the port of delivery; (5) that the overcarriage in this case was not justified by anything in the circumstances, or in the bill of lading, but amounted to a deviation in the maritime law, which made the carrier liable as insurer, and hence liable for a subsequent loss, even though by sea perils; (6) that the reasonable construction of the limitation clause in the bill of lading was against liability above $100 per package, and as thus construed, it was a valid limitation.

This was a libel by Climace Calderon against the Atlas Steamship Company, Limited, to recover damages for the nondelivery of a cargo.

North, Ward & Wagstaff, for libelant.
Wheeler & Cortis, for respondent.

BROWN, District Judge.   On the 19th of July, 1893, the libel-ant delivered to the respondent, the owner of the steamships Ailsa and Alvo, in the city of New York, 26 bales and 3 crates of duck uniforms, to be transported to Baranquilla by way of Savanilla.   The goods were taken to the wharf and delivered to tne steamer Ailsa a few hours before she sailed.   The steamers above named belonged to the Atlas Line, and were accustomed to touch at Southern ports in the following order:   Kingston, Savanilla, Cartha-gena, Port Lemon, and thence back direct to New York.   The Ailsa arrived in due course at Savanilla, where she discharged other cargo; but the libelant's goods were overlooked, and the failure to discharge them was not discovered until she was well on her way towards Carthagena, the next port, 76 miles distant.   Having to take on bananas—perishable cargo—at Port Lemon, the last port, which were in waiting for her regular sailing days, and there being no other means of sending back the goods to Savanilla after the nondelivery was discovered, they were brought back to New York, where the Ailsa arrived on the 16th of August, and immediately reshipped them on board the Alvo, which sailed on the same afternoon, and on her way out foundered at sea in a hurricane, in which ship and cargo were a total loss.   The above libel was filed to recover the value of the 29 packages above named, amounting to about $5,600.

In the body of the bill of lading was the provision, that the steamer had liberty to call at any other port or ports in any order of rotation, etc., and that the owner and consignee agreed to be bound by "all the stipulations, exceptions and conditions as printed on the back thereof, whether written or printed, as fully as if they were all signed by the owner, consignee, or holder."   On the back were indorsed numerous exceptions, among others, that of perils of the seas, followed by nine numbered clauses, three of which only are material here:

(1) That the "carrier should not be liable * * * for goods of any descrip-tion which are above the value of $100 per package, unless bills of lading are signed therefor, with the value therein expressed, and a special agreement is made."   (9) "Also in case any part of the goods cannot be found for delivery during the steamer's stay at the port of destination, they are to be forwarded by first opportunity when found, at the company's expense; the steamer not to be held liable for any claim for delay or otherwise."   Last: "This agree-ment is made with reference to and subject to the provisions of the U. S. carriers' act, passed February 13, 1893.

"[Signed]                          Prim, Forward & Co., Agents."

The libelant had been accustomed to ship goods previously by the same line in numerous instances, upon bills of lading of the same character.   Having delivered the goods to the Ailsa only a few hours before sailing, he did not receive the present bill of lading until after she sailed; but at the time of delivery he received a shipping receipt for the goods stating that they were subject to the conditions ex-pressed in the company's form of bill of lading; and the bill of lading in the usual form as above expressed was afterwards delivered to him. Under such circumstances, he must be deemed to have had full knowl-

edge of the conditions indorsed on the back of the bill of lading, and referred to in the body of it, and to have acquiesced in and agreed to those conditions, so far as they were lawfully inserted and were legally valid. Potter v. The Majestic, 9 C. C. A. 161, 60 Fed. 624. The provisions of the act of congress of February 13, 1893, known as the "Harter Act," which is the last of the stipulations indorsed, supersede all the other provisions that are inconsistent with it, either in the body of the bill of lading or indorsed upon it.

The provisions of the act last cited (2 Supp. Rev. St. c. 105, p. 81) provide that it "shall not be lawful to insert in any bill of lading any agreement whereby the owner shall be relieved from liability for loss or damage arising from negligence, fault or failure in the proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge; any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect." If, therefore, the respondents are chargeable with negligence or failure in the proper loading, stowage, or proper delivery of these goods, they are liable for the damages arising therefrom, anything else in the bill of lading, or in the provisions indorsed thereon, to the contrary.

It is plain that independently of the ninth clause indorsed on the bill of lading as above quoted, there was "a failure in the proper delivery" of these goods. "Proper delivery" includes a timely delivery. It does not permit goods to be carried voluntarily away from the port of destination upon another voyage. The defense must, therefore, rest on the stipulation of the bill of lading. But the Harter act prohibits the insertion of any stipulation excusing a "failure in proper delivery." The words "proper delivery" as used in the act cannot mean any kind of a delivery that may be stipulated for, however unreasonable the stipulation may be; since that would thwart the very purpose of the first section of the statute, which was designed to protect shippers against the imposition of unreasonable stipulations in bills of lading to the prejudice of their interests. It is, perhaps, competent for the parties to make special provisions as to the mode of delivery, having reference to the usual ways of business, and the conveniences or necessities of vessels in touching at various ports; and insofar as these stipulations are shown by the circumstances to be reasonable, they may be upheld, as defining what a "proper delivery" shall be, and may thus justify what might not otherwise be held to be a proper delivery. Further than this, such stipulations cannot go without subverting the purpose of the act.

It is contended for the respondent that the ninth clause is a reasonable one, inasmuch as the necessities of proper stowage and distribution of a mixed cargo for the safety of the ship, and the frequent receipt of goods on the last day of sailing, cause goods to be sometimes necessarily so stowed as to be naturally overlooked or missed at the different ports of call, because they cannot be found at the time when they ought to be discharged; and that the ship, being under the necessity of making trips at regular dates, without delays that would be injurious to perishable cargo waiting for it, should not always be bound to wait for a general overhauling of

cargo not destined for the port of call, but should have the privilege in such cases of forwarding the goods afterwards when found, at its own expense.

Conceding the reasonableness and validity of the stipulation in the present case, it manifestly must be applied with strictness as against the carrier. It cannot be sustained as a defense where the failure to find and deliver the goods has resulted from any negligence in the stowage or care of the goods with reference to the convenient finding and delivery of them at the port of call; or where there has been any remissness in such search for the goods as is practicable at the time; and the burden of showing diligence in these respects is upon the carrier.

The respondent's evidence in the present case, wholly fails to meet these requirements. If, as one witness states, the goods were placed at the bottom of No. 3 hold, with goods for Carthagena stowed above them, that was negligence in stowage of Savanilla cargo, unless it was designed to discharge all the goods in No. 3 hold at that port. There is, moreover, no evidence of any endeavor whatsoever to find the goods at Savanilla. The limitation of the ninth clause, viz. "if the goods cannot be found," is certainly not a meaningless provision. It is of the very essence of any reasonableness in that stipulation, that all reasonable efforts shall be made to find the goods, as well as to avoid burying them at the port of shipment in places where they cannot, or are not likely, to be found. Here there is no evidence of care in either respect. The failure to deliver the goods does not seem to have been even noticed until the vessel had left Savanilla and was well on her way to Carthagena. The inference, therefore, is that the cause of the overcarriage was mere inattention in stowing or in discharging. I must find, therefore, that there was a "failure in the proper delivery" of the goods at Savanilla, not excused by anything in the testimony, or in the bill of lading.

As the respondent fails to justify its carriage of the goods beyond their destination, the case as respects these goods becomes one of deviation. The vessel, it is true, did not herself depart from her course, or delay her contemplated voyage; but she continued the carriage of these particular goods upon the high seas long beyond what the contract allowed, exposing them to three times the sea perils contemplated, and in the end shipped them upon another vessel from the original port of departure, whereby they were lost through sea perils.

It is urged that the final loss of the goods was by a hurricane, an extraordinary sea peril, which was an accidental result, and not a proximate or natural result, of the overcarriage. The cases of Railroad Co. v. Reeves, 10 Wall. 176; The R. D. Bibber, 8 U. S. App. 42, 2 C. C. A. 50, and 50 Fed. 841; Denny v. Railroad Co., 13 Gray, 481; Hoadley v. Transit Co., 115 Mass. 304; Railroad Co. v. Burrows, 33 Mich. 6,—are cited in support of this contention. None of these cases, however, are cases of voluntary or negligent deviation in the carriage of goods by sea. In marine transportation it is well settled that any unauthorized overcarriage of goods, or a shipment

of them by another vessel than that contracted for, renders the carrier liable as insurer; both for violation of the contract, and because the shipper's insurance is thereby avoided, and he has no opportunity to protect himself by the ordinary security of marine insurance. These reasons apply more emphatically in this case than in ordinary cases of deviation. For these goods were brought back to the very point of starting; no notice was given to the shipper; he was ignorant of the facts, and the opportunity was not given him to insure that might have been given. The cases above cited have never been applied, so far as I know, to cases of maritime deviation. I must, therefore, hold the respondent liable as insurer. 1 Pars. Shipp. & Adm. 171, note, and many cases there cited; Ellis v. Turner, 8 Term R. 531; Trott v. Wood, 1 Gall. 443, Fed. Cas. No. 14,190; Bazin v. Steamship Co., 3 Wall. Jr. 229, Fed. Cas. No. 1,152; The Bordentown, 40 Fed. 682, 689.

It is further contended that under the first clause of the bill of lading, the libelant's recovery cannot exceed $100 per package, as the value was not made known, nor any agreement made for the payment of freight at an extra rate. The validity of stipulations of this character has been repeatedly upheld by the supreme court (Railroad Co. v. Fraloff, 100 U. S. 24, 27; Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151; Magnin v. Dinsmore, 70 N. Y. 410; Baldwin v. Liverpool, 74 N. Y. 125); and recently in the court of appeals of this circuit in Potter v. The Majestic, 9 C. C. A. 161, 60 Fed. 624, 630.

It is urged that effect ought not to be given to this stipulation, because literally read it provides that the carrier shall not be liable for anything in this case; and that this is so unreasonable that the stipulation should be allowed no effect at all. I do not think that construction was the intention of the stipulation, or that it is a reasonable construction of it. Literally, the goods which are above $100 in the package may be excluded from consideration, and only those which amount to $100 be regarded. That, I think, is the fair intention of the clause in question; and as the decisions cited sustain it as thus construed, I must hold accordingly, and allow a decree for the libelant for $2,900, for the 29 packages, with interest and costs.