THE SINTRAM.

MOSLE v. THE SINTRAM.

(District Court, S. D. New York. December 18, 1894.)

CARRIAGE OF GOODS—DAMAGE TO TEA—LEAKS IN WATER WAYS—SEAWORTHINESS—SEA PERILS—HARTER ACT.

The ship S., upon a voyage from Hong Kong to New York around Cape Horn, had for 20 days rough seas, aft gales, and much rolling and shipping

of water, during which the seams of her water ways began working and took in some water, causing a comparatively small amount of damage to a cargo of tea stowed in the between decks. Upon evidence of careful inspection before the voyage was commenced, both by the owners and by the insurers of cargo at Long Kong, and of the high rating and general staunchness of the ship, *held* (1) that the sea perils shown were an adequate cause for the leaks in the water ways, consistent with seaworthiness at the beginning of the voyage, and that the tea damage was, therefore, to be ascribed to sea perils within the exception of the bill of lading; (2) that the evidence showed "due diligence" in the carrier, within the third section of the Harter act (2 Supp. Rev. St. 81).

This was a libel by George W. Mosle and others against the ship Sintram to recover for loss of a cargo.

Wing, Shoudy & Putnam and C. C. Burlingham, for claimants.
George A. Black, for libelant.

BROWN, District Judge. On the arrival of the ship Sintram at this port on the 8th of January, 1894, with a cargo of nearly 28,000 boxes of tea from Hong Kong, some 300 or 400 were found to be water-stained on the outside so as to require reconditioning, and about as many more had the contents also somewhat damaged by sea water, and were sold as damaged. The claimant pleads sea perils, and the Harter act (Act Feb. 13, 1893; 2 Supp. Rev. St. 81), in defense.

The tea was stowed in the between decks. The damage was to the boxes along the sides of the ship, and is shown to have come from sea water taken in through the water ways. No claim was made until several months after the arrival of the vessel, and after all the witnesses on the ship had been scattered except the master. From his deposition, as well as from the log, it appears that the ship, having a light cargo, was four feet higher in the water than with an ordinary heavy cargo; that in coming around Cape Horn, and previous thereto, the ship had for 20 days very heavy seas, shipping considerable water, and with aft gales, which caused a good deal of rolling and straining, so as to set the water ways to working, which resulted in taking in some water. The master endeavored to correct this so far as possible by caulking in the water ways twice.

Even under the law as it existed previous to the Harter act, I think the explanation of this damage properly brings it under sea perils, within the exceptions of the bill of lading. And the evidence also justifies the conclusion not merely that the owners used all "due diligence to make the ship seaworthy" within the terms of the Harter act, but that the ship was seaworthy at the time of sailing, having reference to the cargo and the contemplated voyage.

Though the owner formerly warranted the absolute seaworthiness of the vessel (The Edwin I. Morrison, 153 U. S. 210, 14 Sup. Ct. 823), this absolute warranty of seaworthiness does not mean a warranty that neither ship or cargo shall suffer damage on the voyage; nor exclude sea perils, and the damage that may arise therefrom. It means only that the ship is in all respects reasonably fit for the voyage, i. e. "competent to resist all ordinary action of the sea" (per

Mr. Justice Curtis, Dupont de Nemours & Co. v. Vance, 19 How. 162. See, also, The Titania, 19 Fed. 105–108, where this subject is considered at length; The Rover, 33 Fed. 515, affirmed 41 Fed. 58; The Exe, 52 Fed. 155; and see The Allie & Evie, 24 Fed. 749).

The evidence shows all reasonable and customary care and diligence to make the ship sufficient, so far as human foresight could perceive before sailing; that the regulations in that regard at Hong Kong are among the most stringent; and that the surveyors of the insurers of cargo inspected the vessel and suggested nothing further to be done; and that she rated in the highest class. The water ways and the break of the poop are places peculiarly liable to sustain injury by straining in heavy weather, and are always the first to show signs of working and liability to take in water. Leaks soon happening in ordinary weather are presumptive evidence of unseaworthiness at the time of sailing. Cort v. Insurance Co., 2 Wash. C. C. 375, Fed. Cas. No. 3,257; Higgie v. American Lloyds, 14 Fed. 143; The Gulnare, 42 Fed. 861; Hewlett v. The Millie R. Bohannon, 64 Fed. 883. But where the evidence shows that reasonable care had been exercised to make those seams tight, and that the ship is in other respects tight and staunch, and shows general efforts to make her in all respects seaworthy, comparatively small damage arising from some leaks in the water ways first appearing after continued heavy seas and rolling, and shipping water, is insufficient to overcome general evidence of seaworthiness at the commencement of the voyage, and is ascribed to sea perils; because a specific and adequate cause is shown consistent with seaworthiness at the beginning of the voyage (Watson v. Insurance Co., 2 Wash. C. C. 480, Fed. Cas. No. 17,285; Lawrence v. Minturn, 17 How. 100; Pyman v. Von Singen, 3 Fed. 802; The Orient, 16 Fed. 916; The Titania and The Rover, ut supra, and cases therein cited; The Thomas Melville, 31 Fed. 486, affirmed 36 Fed. 709; 2 Arn. Ins. [6th Ed.] 679;) and such I find to be the fact here, despite the opinions of some of the witnesses to the contrary.

The libel is dismissed, with costs.

---

### On Motion for Reargument.
#### (Dec. 31, 1894.)

On the motion for reargument of the above case, nothing is pointed out that I have previously overlooked, either as to matters of fact, or of law.

The question of seaworthiness at the time of sailing was in this case wholly a question of fact, as it is in most cases. The decision of that question must depend upon the appreciation by the court of all the facts bearing upon it. In this case I have found as a fact that there was no latent defect, but that the ship was seaworthy when she sailed, both as respects her water ways and about the break of the poop; because the proof showed that she was a sound and staunch ship; and that as respects these water ways and the break of the poop, she was carefully inspected and recaulked and tightened up just before sailing, in a way to make her "suitable,"

and "reasonably sufficient" for the voyage, which is all that seaworthiness means. It is not a warranty against strains, or sea perils. There is no question, therefore, of "latent defects" in the case, as a question of law, or as respects the "warranty" of a common carrier, where sea perils are not excepted; and hence many of the cases cited by counsel are inapplicable. Here sea perils were excepted; and the main question considered by me, aside from the Harter act, was one of fact, viz., whether the subsequent leaks were sufficiently accounted for by the weather and tempestuous seas, so as to be properly ascribed to sea perils, rather than to unseaworthiness on sailing. I have found that they were; and I see nothing in the points submitted to change that opinion. The log and the master's deposition seem to me to require that conclusion; and there is no proof of any facts to the contrary.

In the case of Hewlett v. The Millie R. Bohannon, 64 Fed. 883, decided about the same time as The Sintram, I held that the leaks, under circumstances altogether different, were evidence of unseaworthiness at the time the vessel sailed, five days before. There is not the least difference in the rules of law applicable to these cases; nor are they in any degree incompatible with the cases cited from the supreme court, or the former decisions of this court.

Motion denied.