## THE MILLIE R. BOHANNON.

### HEWLETT et al. v. THE MILLIE R. BOHANNON.

(District Court, S. D. New York. December 20, 1894.)

SEA CARRIAGE — WORKING — CALM — LEAKS AROUND CENTERBOARD — UNSEA-WORTHINESS—LACK OF DUE DILIGENCE—HARTER ACT.

The three-masted centerboard schooner M. R. B., on a voyage from Cardenas to New York, when five days out, met a dead calm in a heavy swell of sea, during which she rolled considerably, and during two hours—from 12 to 2 p. m.—sprang a leak, taking in three feet of water, which was with difficulty got under control at 6 p. m., when a breeze sprang up, after which there were no more leaks. The evidence left no doubt that the leak was in the centerboard seams, along the keelson and grub beam, in the bottom of the schooner. *Held*, that so heavy a leak, so soon after leaving port, due to mere rolling in a calm, was inconsistent with reasonable fitness for the voyage, or with that necessary careful inspection of the seams about the centerboard which "due diligence" under the Harter act required; and that the vessel was liable for the damage to sugar cargo caused by the leak.

This was a libel by George Hewlett and others against the schooner Millie R. Bohannon to recover for damages caused by leakage to a quantity of sugar.

George A. Black, for libelants.

Wing, Shoudy & Putnam and C. C. Burlingham, for claimants.

BROWN, District Judge. On a voyage of the three-masted schooner Millie R. Bohannon from Cardenas to New York, where she arrived on May 25, 1894, the libelants' consignment of 3,400 bags of sugar, stowed on top of mahogany in the bottom of the hold, was damaged by sea water, some bags on discharge being empty, and some partly empty. The evidence leaves no doubt that there was no extraordinary weather upon the voyage; that the ship, nevertheless, sprang a leak on the 14th of May, during a calm, in which she was unmanageable and lay rolling in a heavy swell; and that the leak which began between 12 and 2 o'clock p. m. was so heavy as to show by the pump soundings from two to three feet of water in the hold, though the rod may have shown more depth than was actually present, from the effects of heavy rolling. Only the lower tier of bags was damaged.

When the vessel was docked in New York, after discharge, the only place seen upon her hull in which water might enter, was a fracture in one of the plank streaks of the bow below the water line, believed by experts to have arisen while the vessel was building. All the witnesses agree, however, that this would not naturally account for the great amount of water that appeared in the hold so suddenly between 12 and 2 o'clock of the 14th of May. By means of four hand pumps, and a small donkey engine attached to a fifth pump in addition, the hold was not cleared of water till about 6 p. m.; whereas, before that, ten minutes at a single pump every two hours was sufficient to keep her clear. After 6 p. m. some wind sprang up, and the vessel then proceeded upon her course, and thereafter leaked no more than before the calm. The opinion of the master is that the working of the vessel caused the seams along the keelson and the grub beam—the schooner being a centerboard boat

—to open in the heavy rolling.   The claimant pleads the third section of the Harter act as an exemption of liability in this case, contending that he has shown "due diligence to make the said vessel in all respects seaworthy."   Act Feb. 13, 1893 (2 Supp. Rev. St. 81 § 3).

I must certainly hold that this schooner was not in fact seaworthy for the voyage undertaken.   The weather was not extraordinary. The rolling in calm weather was no more than the vessel was liable to meet.   She was but five days out from Cardenas; and she soon began to leak heavily.   Such circumstances are wholly inconsistent with a seaworthy condition at the time of sailing.   The Edwin I. Morrison, 153 U. S. 199, 212, 14 Sup. Ct. 823; Cort v. Insurance Co., 2 Wash. C. C. 375, Fed. Cas. No. 3,257; The Gulnare, 42 Fed. 861; Andeson v. Morice, L. R. 10 C. P. 58, 68; Pickup v. Insurance Co., 3 Q. B. Div. 594, 598, 600; 2 Arn. Ins. (6th Ed.) 670, 678.   The circumstances are wholly different from those of The Sintram, recently decided, where leaks in the waterways after 20 days of heavy rolling were held not inconsistent with both seaworthiness and due diligence in the owners.

The provisions of the Harter act exempting the vessel and owners from liability to damage to cargo where they have used "due diligence" to make her seaworthy, is not to be loosely construed.   The construction of this boat with a centerboard made her specially liable to weakness in the seams along the keelson and grub beam; and leaks there were specially perilous.   "Due diligence" requires a carefulness of inspection and repair proportionate to the danger. The Edwin I. Morrison, 153 U. S. 199, 14 Sup. Ct. 823, affirming 27 Fed. 136.   The sudden and heavy leaks, when a few days out of port, on mere rolling in a calm, are as inconsistent with "due diligence" to make the centerboard seam tight, as they are inconsistent with seaworthiness, ·i. e., reasonable fitness for the voyage.   "Res ipsa loquitur."

The design of the Harter act was, I have no doubt, to relieve the carrying vessel from her previous responsibility as insurer against latent defects; and to limit her liability as respects seaworthiness to the obligations of "due diligence" to make the ship seaworthy. From the facts respecting this leak and the circumstances, it is impossible for me to believe that such a careful, diligent examination as the construction of this vessel made necessary, would not have disclosed the defects in the seams about the centerboard; or that the inspection, by which the vessel is now sought to be justified, was other than casual, and superficial.

Decree for libelants, with costs, with a reference to ascertain the amount of the damages, if not agreed upon.