### THE BRITISH KING.

#### (District Court, S. D. New York.   July 29, 1898.)

CARGO-DAMAGE—SEAWORTHINESS—LEAK IN BALLAST TANK—HEAVY WEATHER —SLUICE-VALVE IN BULKHEAD NOT WATERTIGHT—INATTENTION TO PUMPS —HARTER ACT—MANAGEMENT OF THE SHIP.

Chemicals and rags being damaged by sea water from leaks in a steamer's ballast tank, which was found sprung and the rivets started and broken after heavy weather; *held*, upon evidence of first-class construction, careful inspection and good stowage, that the leak was sufficiently explained by the heavy weather that preceded it, and that the vessel was seaworthy; also *held* (2) that lack of proper attention to the pumps, which might have earlier disclosed the leak and prevented the damage, was negligence in the "management of the ship," for which the ship was not liable under the Harter act; also *held* (3) upon proof that the sluice-valve in the bilges connecting compartments 4 and 5 was not watertight, that this fact did not constitute unseaworthiness, even if it existed at the commencement of the voyage, because not a failure in any necessary requirement, and because any leak therefrom would be sufficiently guarded against by proper attention to the pumps.   The complaint was therefore dismissed.

Conway & Westwood, for libelant.
Convers & Kirlin, for claimant.

BROWN, District Judge.   The above libel was filed to recover for the damage to certain barrels of chemicals and to some rags stowed in the lower hold, compartments 4 and 5, of the steamship British King, on a voyage from Antwerp to New York in December, 1897. The damage was caused by water leaking from the water ballast tank in compartment No. 5, and thence through the sluice-cock into compartment No. 4 whereby the cargo in both compartments was injured.   On examination of the ballast tank after arrival in New York the tank was found somewhat sprung, some of the rivets in each side were started, some broken, and one upper edge seam a little open.   The libel charges that the tanks were weak and unfit on leaving Antwerp, and that the steamer was unseaworthy in that regard.   The answer alleges that the ship on sailing was in all respects seaworthy, and that the damage arose from the straining of the vessel and consequent injury to the tank in extraordinary weather on the night of April 20th.

1. The burden of proof is no doubt upon the steamer. In my opinion this burden has been fully and fairly sustained. The evidence establishes beyond question; (1) a ship of first-class construction and equipment; (2) thorough overhauling and repair, where necessary, and inspection and tests of the tanks and sluices, at the regular and customary periodical survey within less than a year prior to this voyage; (3) careful inspection of the limbers and tanks immediately before she sailed, and that the tanks were then tight; (4) good stowage; (5) that during the first six days of the voyage, notwithstanding considerable bad weather and heavy rolling and pitching of the ship, no water was made beyond the usual bilge water, showing that no leak had arisen in the tanks prior to 6 p. m. of April 20th; (6) that at 10 p. m. of that day 14 inches of water were found in the bilges, and that the pumps had then to be used three times as long as usual in order to clear them; and on the next morning at 8 a. m. 30 inches of water was found in compartment No. 5, and 26 inches in No. 4, causing the damage in question; (7) that the weather during the night of the 20th was extraordinary, the captain being all night on the bridge, and the first officer also on deck. The following are a few extracts from the log, verified by the officers: April 16th, "High sea, ship plunging greatly and shipping heavy water." April 17th, same, and "laboring and straining badly." April 19th, "High sea, ship rolling and plunging heavily, shipping heavy water." April 20th, "Diving heavily, rolling and straining badly in a high head sea. Very rough sea. High squalls. Very high cross swell and sea. Ship laboring and straining badly. Sails set to steady ship." April 21st, same, and "Ship rolling and straining violently. On sounding found 26 inches in No. 4, 30 inches in No. 5 bilges. Pumped out ballast tank. Ship rolling incessantly with violence. Pumping potash out of the bilges."

From these facts and circumstances I find that the tanks were in good seaworthy condition when the ship sailed from Antwerp on April 14th; that the extraordinary weather with the consequent heavy rolling and pitching of the ship and the attendant straining, racing and vibration, caused the springing of the tank and valve pipe and the starting of the rivets, as shown by the evidence; and furnishes reasonable and sufficient explanation of the leak, which presumably began a little before 10 p. m. of April 20th; and that the damage to the goods in question should therefore be ascribed to sea perils, as its primary cause. The Warren Adams, 20 C. C. A. 486, 74 Fed. 413, 415, 416; The Sintram, 64 Fed. 884; The Sandfield, 79 Fed. 371, 375; The Mauna Loa, 76 Fed. 837; The Centurion, 15 C. C. A. 480, 68 Fed. 382.

2. The secondary cause of the damage, was the failure to take soundings and apply the pumps between 10 p. m. of the 20th and 8 a. m. of the 21st. Considering that the ship's carpenter and the officers who attended to the soundings had notice of an accumulation of 14 inches of water in the bilges in 4 hours from 6 p. m. to 10 p. m. of the 20th of April, during heavy weather, and that this weather continued with equal or increasing severity during the night, it was a very plain lack of ordinary prudence, and hence was negligence, not to

make any soundings during the following 10 hours up to 6 a. m. of the next day, during which time an accumulation of water at the same rate as during the preceding four hours must manifestly exceed 20 inches, which, as all knew, would be dangerous to the cargo. The accumulation of water from 6 to 10 p. m. was extraordinary; and if not of itself indicative of the specific cause afterwards ascertained, it was at least plainly indicative of the necessity of more frequent soundings and pumping during the continuance of heavy weather. The carpenter says that at 10 p. m. he reported the facts to the chief officer, which is denied by the latter. Had soundings been properly repeated after 10 p. m. of the 20th, there is no question that the pumps would have controlled the leak, as they did the next day, and no damage would have arisen. The failure to take soundings and to apply the pumps as the known facts showed to be necessary, was therefore the final and immediate cause of the damage. But for this negligence the ship and owners are not liable, under the third section of the Harter act; because it was negligence in the "management of the ship." The Sandfield, 79 Fed. 371; The Mexican Prince, 82 Fed. 484; The Silvia, 15 C. C. A. 362, 68 Fed. 230.

3. On the argument it was urged that no damage in compartment No. 4 would have occurred if the sluice-valve in the bilges connecting No. 4 and No. 5 compartments had been tight; that this was a defect which existed when the ship sailed, and constituted unseaworthiness, which entitles the libelant to recover for the damage done in compartment No. 4, even though the leak in No. 5 was due to sea perils.

Neither the pleadings nor the evidence warrant a decree for the libelant on this ground. The libel contains no charge of defective sluices, nor any averment that a leaking sluice-way constitutes unseaworthiness; nor is there testimony from any witness on either side to support such an averment, if it had been made. Bulkheads are often used for other purposes than to make water-tight divisions of the hold, and hence in such cases are not expected to be water-tight (The G. R. Booth, 64 Fed. 878; Hills v. Mackill, 36 Fed. 702; The Silvia, 64 Fed. 607); and even when they are designed to be tight, for the greater safety of the ship or the better preservation of the cargo, I do not see how mere imperfection in carrying out this design can be said to constitute unseaworthiness, when the absence of bulkheads altogether has no such effect. At least I cannot presume this to be so, in the absence of evidence or authority. If there has been any express or implied warranty or representation that a vessel's bulkheads are water-tight, any damage resulting from leaking, must in that case be sought upon the ground of a breach of the warranty or for the false representation, and not for unseaworthiness; and the pleadings must aver, and the evidence sustain such a case.

Where cargo is stowed against a water tank, or against a bulkhead serving as one side of a tank, if the tank or bulkhead is not tight, the vessel, though seaworthy as respects navigation, may be unseaworthy as respects cargo; since the direct natural consequence of the leak in that case is to damage the cargo, and the ship, therefore, is not in a reasonably fit condition for its transportation. The Carib Prince, 35 U. S. App. 390, 15 C. C. A. 385, and 68 Fed. 254; Id., 63

Fed. 266; Id., 170 U. S. 655, 18 Sup. Ct. 753. But that is a wholly different case from a mere leak between adjoining cargo compartments. In the latter case, if the ingress of water in the first compartment is due to sea-perils, or to negligence in the "management of the ship," the extension of the damage to an adjoining apartment by a leak in the bulkhead is of the same nature, unless some representation or warranty can be invoked as a separate ground of liability. Where a ship, moreover, is supplied with adequate pumps, any minor leaks in the sluice-valves are not naturally calculated to damage the cargo, if the pumps are properly attended to; and hence such leaks have no analogy to insufficient water tanks, and any resulting damage is to be set down to negligence in not properly attending to the pumps. Steel v. Steamship Co., 3 App. Cas. 72; The Silvia, 15 C. C. A. 362, 68 Fed. 232.

I have considered the more fully the latter aspect of this case, because upon the evidence there may be some doubt whether the sluice-way was not leaky through wear at the time the vessel sailed. Contradictory opinions are expressed on this point. But as the pipe carrying and protecting this valve was found bent after the voyage, and had to be lined up, and no other cause of this injury has been suggested, I think this injury should be ascribed to the same heavy pitching that sprang the tank; and this, by making the plug untrue, would sufficiently account for the leak. The leak from wear alone, if any, must have been of a very minor character, and within the easy control of the pumps in their ordinary use; and hence in no aspect of the case could the wear of the valve amount to unseaworthiness at the commencement of the voyage.

Decree for respondent with costs.