## THE G. N. HANNOLD.

### THE MOLLIE.

(District Court, E. D. Pennsylvania. January 9, 1909.)

Nos. 51 and 54.

TOWAGE (§ 15*)—NEGLIGENCE OF TUG.

The dumping by a lighter of her deck cargo of iron ore while in tow *held*, under the evidence, to have been due to her unseaworthiness by reason of water in her hold, which rendered her liable for the loss, and not to any negligence on the part of the towing tug.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 36; Dec. Dig. § 15.*]

In Admiralty. On final hearing.

Francis S. Laws, for libelant.
Henry R. Edmunds, for the G. N. Hannold.
John F. Lewis and Francis C. Adler, for the Mollie.

HOLLAND, District Judge. The Pennsylvania Salt Manufacturing Company filed its libel against the lighter Hannold to recover the value of the cargo of ore which was dumped into the Delaware river, off the end of Pier No. 92, on the Philadelphia side, by reason, as alleged, of the unseaworthiness of the boat. To this libel an answer was filed by the owner of the Hannold, denying unseaworthiness of the lighter, together with a petition asking that the steam tug Mollie be made a party to the proceedings, and charging that the loss of the cargo was due to the negligent towage of the tug Mollie in attempting to tow the lighter out into the river on August 10, 1904.

The Hannold was constructed for the purpose of carrying cargo on deck. Her deck length was 106 feet, and beam 26 feet, and it was square at both ends. On the bottom she was 84 feet in length and 25 feet beam. Upon the morning of August 10, 1904 she was loaded on deck with a cargo of 437 tons of iron ore. At 6:45 o'clock on the morning of this date the tug Mollie arrived to tow the lighter from the dock in which she was moored to Mantua Creek, N. J., there to deliver her cargo to I. P. Thomas & Sons Company. The captain and a laborer, whom he had employed, had been pumping water out of her hold all night, and at 6:45 o'clock in the morning, when the tugboat arrived, the captain of the latter asked the captain of the lighter whether he was "ready to go to Mantua Creek, and he (captain of the lighter) said he was all right and ready to go." The tug passed a line to the lighter, and the captain thereof made it fast to the stern port cleat. She was then towed some distance out of the dock, when the captain of the lighter suggested that it be changed to the stern

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

starboard cleat; which was done, and the tug proceeded to tow the latter into the stream. When a point was reached about 150 feet from the end of the wharf the lighter suddenly took a list to starboard, turned over, and dumped her cargo into the river.

The defense that the tug was negligent in not taking the barge alongside is not sustained by the evidence, as I am not convinced that the tug could have, with safety, gotten alongside with the lighter and the other boats in there at the time; nor is there sufficient to show that the Mollie was at all negligent in towing the lighter out with only one hawser to her starboard cleat, as the evidence of the experienced tugmen is to the effect that it was a proper mode of procedure under all the circumstances surrounding the lighter at the time; nor does the evidence show that the lighter listed because of its having struck the south Pier No. 93, or touched bottom on the shoals opposite to the latter pier. The lighter had dried out considerably, so that her seams both on the sides and ends had opened. After about 100 tons were placed aboard, which gave her a draft of something over 2 feet, the captain noticed she was leaking badly, and when the entire cargo was aboard there was about 10 inches of water in her hold. At the suggestion of some one on the wharf she was moved over to the north pier in deep water. She had touched ground on the port side at the wharf where she was loaded; but the captain claimed that after she was moved to the north pier the leaking ceased.

The evidence as a whole convinces me that the lighter was unseaworthy, and that, notwithstanding the pumping that was done during the night and the claim that the barge was constructed with keelsons sufficient to prevent the water from causing her to list, yet there is no other explanation for the sudden listing and turning over of the barge, other than that she was not in a sufficiently seaworthy condition to stand up under the deck load placed upon her, by reason of the fact that the water in her hold, whether much or little, was sufficient to cause her to capsize. The weather was clear, there was little or no wind, and the river was perfectly smooth. The lighter was being towed out into the stream as carefully as it was possible to do; the captain of the tug, according to the evidence, observing the usual method of performing this preliminary work before towing the lighter to its destination.

The Hannold was built to carry its load on deck, which was 106 feet by 26 feet beam, and the bottom 84 by 25 feet beam, with a draft of 8 feet when loaded to her full capacity, to wit, 500 tons. Upon the day in question she was loaded with a cargo of 437 tons. A lighter so built and so loaded would naturally be topheavy, and, being 22 feet shorter in the bottom than her deck dimensions, would naturally require care on the part of those in charge to see that she was entirely seaworthy at the time to receive a cargo on deck within 63 tons of her full capacity. She failed to stand up under this load on her deck, and, when taken together with the fact that she had been leaking and pumped all night, it is very evident that there was sufficient water in her hold to cause the trouble.

The facts in the case of Nord-Deutscher Lloyd v. Insurance Co., 110 Fed. 420, 49 C. C. A. 1, were similar to those in the case at bar.

The case of The Warren Adams, 74 Fed. 413, 20 C. C. A. 486, is also important in connection with the facts in this case. See, also, The Millie R. Bohannon (D. C.) 64 Fed. 883.

A decree, therefore, will be entered in favor of the Pennsylvania Salt Manufacturing Company, libelant, against the lighter G. M. Hannold for the full amount of the claim, together with costs.