THE THOMAS MELVILLE.

WINDMULLER and another v. THE THOMAS MELVILLE.

LEVY and another v. SAME.

(*District Court, S. D. New York.  June 3, 1887.*)

1. SHIPPING — DAMAGE TO CARGO — PRESUMPTIONS — BURDEN OF PROOF — UNSEA-
   WORTHINESS — DECKS LEAKING — BAD WEATHER.
   Upon proof of injury to cargo by sea-water leaking through the deck, the
   burden of proof is upon the ship to show a sea peril adequate to cause such
   leaks to a seaworthy ship.  This is done *prima facie* by general proof of
   seaworthiness, and that there was no leak until just before arrival, after a
   week of very severe weather.  The burden of proof then returns on the libel-
   ant to rebut this presumption, or show some fault in the ship that made the
   sea peril efficient.

2. SAME — EXPERTS.
   On contrary testimony by experts as to whether a deck properly caulked
   would leak through straining of the ship in severe weather, without visible
   injury to the butts at the side of the ship, and also as respects the mode of
   caulking, *held*, that negligence in caulking and unseaworthiness in that re-
   spect, when the ship sailed, were not proved.

3. ADMIRALTY — PLEADING — AMENDMENT AT TRIAL — NEW CAUSE OF ACTION —
   NEGLIGENCE.
   Upon a libel for damage through negligence specifying unseaworthiness,
   leaky decks, want of proper care and improper stowage, the specifications of
   negligence are in the nature of a bill of particulars.  Evidence of a wholly in-
   dependent kind of negligence, or new kind of damage, as from coal-dust, will
   not be admitted at the trial, nor an amendment of the libel, when the circum-
   stances make it inequitable,—such as the dispersion of the goods, long lapse
   of time, and loss of defendant's witnesses, no satisfactory explanation ap-
   pearing why the new claim was not made a part of the original libel.

In Admiralty.

*John Berry*, for libelant Windmuller.

*Evarts, Choate & Beaman* and *T. Cleveland*, for libelant Levy.

*E. B. Convers*, for the Melville.

BROWN, J.  In October, 1883, the libelants in the above causes
shipped on board the Thomas Melville, at Trieste, a quantity of prunes
in casks, boxes, barrels, and kegs, to be delivered at New York.  On
arrival, many of the packages were found more or less damaged, mainly
from sea-water.  A portion of them had coal-dust on the outside, which
also penetrated some of the cases.  These suits were brought to recover
the damages.

The libels charged an unsafe and unseaworthy condition of the vessel,
so that her decks leaked; and also want of proper care, insufficient dun-
nage, and improper stowage, to the damage in each case of $2,500.
Aside from the alleged damage from coal-dust to which I shall refer
presently, the evidence leaves no doubt that there was damage from sea-
water to such an extent as to throw upon the ship the burden of proof
that it arose from a peril of the seas, and not by her own fault.  The
immediate cause of the damage through sea-water is shown to be leaks

in the deck. These leaks were discovered one or two days before the vessel arrived in New York, but the weather was so bad that the decks could not be caulked. During the week previous, there can be no doubt, upon the testimony, that the vessel experienced very tempestuous weather. Her log repeatedly describes in the strongest terms the severity of the gales, the high seas, the straining of the ship, and the quantities of water taken on board; and the same facts are testified to by her witnesses. These causes were apparently adequate to produce the leaks in the deck that caused the damage from sea-water. This being shown, the burden of proof returns upon the libelants to rebut this, or to show some insufficiency or want of care in the vessel, that made those causes efficient. The libelants have accordingly sought to show that the upper deck seams were insufficiently caulked, and that the vessel was unseaworthy in this respect on leaving Trieste.

The evidence on their behalf on this point consists chiefly in the testimony of experts to the effect that no straining or working of the ship could cause leaks in the deck without also showing the effects of strain at the butts, the rivets, and about the coamings of the hatches; and they testify that, on examination, no such effects were visible. The inference of insufficient caulking, drawn from this testimony, is confirmed, as it is urged, by the fact that the master admits that he was intending to continue further caulking by the ship's carpenter during the voyage from Trieste to New York; but that he did not do so for the reason that the carpenter died at Trieste, and the master could not there obtain another. The claimant's experts, on the other hand, who seem to me to have equal practical knowledge, testify that there were some evidences of straining around the coamings, and that the deck may leak from the working or springing of the ship, with no visible injury to the rivets, or about the butts or sides. One of the libelant's experts is shown to be mistaken in regard to the fullness of the caulked seams. The testimony of others is to some extent discredited by their very evident mistake in regard to the ability to caulk parts of seams properly; as the testimony of practical men, if not common knowledge, sufficiently proves the contrary.

The ship was but 18 months old. She was, in general, well built and staunch. Ordinarily no very extensive caulking should have been needed within that time; but it might be made necessary by much time spent in a hot climate, or from passing from a hot to a cold climate. The Melville had spent about two months in hot regions; but she had been once recaulked almost completely on the voyage preceding the present. On this voyage the master had continued the caulking by the ship carpenter for still further precaution, and had intended to keep him employed in that way. The master, however, states explicitly that this was not from any apparent need of recaulking, but from extra care on his part. Under these circumstances, there is only mere suspicion, not a fair inference of fact, that the ship's decks were insufficient for the voyage when she left Trieste. The evidence shows that there was no leak until after nearly a week's continuance of very severe weather.

Looking at all the circumstances, I do not think the inference warranted that the ship was not in a seaworthy condition on leaving Trieste; that is, not reasonably well equipped for the voyage, with her decks caulked in the customary manner, so as to be fit to encounter all the contingencies of the voyage that were to be reasonably expected. *The Titania,* 19 Fed. Rep. 101, 107, 108. There was no such neglect in the examination of the ship as was the ground of the decision in *The E. I. Morrison,* 27 Fed. Rep. 136; and no latent defects, as in *Hubert* v. *Recknagel,* 13 Fed. Rep. 912.

The master and first officer were plainly in the habit of keeping watch of the deck. They discovered the leak at about the same time, a day or two before reaching New York, and they testify that before that time its condition and its appearance were good.

2. The weight of proof, as respects dunnage, is certainly with the claimants. Mr. Meyers, a very competent witness, indeed, is the chief reliance of the libelants on this point. But he saw only a small portion of the cargo. The purpose of his examination was to observe the sea damage. He was present only once, and for a short time only; and his observation in regard to dunnage was incidental merely. This is not sufficient to overcome the very considerable amount of testimony to the contrary given by the claimants.

3. The damage from coal-dust, as a separate cause of action, is not referred to in either of the libels. Although some reference seems to have been made to it by the libelants in dealing with the insurers, and a few questions were asked concerning coal-dust by the claimants in their depositions taken in 1883, it was not presented as a separate ground of claim in this action until the trial of the cause, more than three years after the arrival of the ship. This was long after the respondent's depositions had been completed, and the goods sold and beyond the reach of examination. Upon this ground an amendment of the libel to include this cause of action was strenuously objected to by the claimants, and was disallowed at the trial. Further consideration of this point does not seem to me to make justifiable the allowance of the amendment asked, under such circumstances. Some coal-dust, as the captain states, is generally found upon portions of the cargo. The number of casks and boxes now claimed to be damaged by coal-dust far exceeds what could have been stowed in the upper and empty coal-bunker, where but a small portion of the cargo was stowed after the bunker was cleaned; and special care was apparently taken to prevent any injury from coal-dust there. It is not shown that any part of the libelants' goods were stowed in that compartment. In admiralty causes, where testimony is taken upon all the merits of the case without objection, and no surprise or injury can result to either party, the pleadings will be deemed conformed to the proofs. See *The Maryland,* 19 Fed. Rep. 551, 557, and cases there cited. And so also, where the libel contains only a general charge of negligence, and the parties go to trial without any other specification of the kind of negligence, assent to proof of any kind of negligence may be inferred. But as the respondent would be entitled, on demand, to

have the particulars of negligence specified, so, where the libel in connection with an averment of negligence in general, sets forth the particular kind of negligence for which the claim is made, the issue must be deemed limited to those particulars as much so as if a bill of particulars had been served on demand. To permit an amendment by averring substantially a new cause of damage at the trial, where reasonable objection appears, cannot be allowed. As a rule, it would be unjust and impolitic. *McKinlay* v. *Morrish*, 21 How. 343; *The M. M. Caleb*, 10 Blatchf. 467, 471, 472. Such an amendment was recently denied in the case of *The Keystone*, *ante*, 412.

In the present case, not only the great lapse of time, and the laches of the libelants in presenting the amendment, but the loss of evidence on the claimant's part, and the liability to gross exaggeration in respect to a claim not presented in the libel, all concur in leading me to adhere to the view expressed at the trial.

The libels are dismissed, with costs.