THE HAMILTON.

THE SAGINAW.

(Circuit Court of Appeals, Second Circuit. June 22, 1906.)'

No. 276-2.

1. DEATH—COLLISION—LIABILITY OF SHIPOWNER—WHAT LAW GOVERNS.
Where both vessels which came into collision in a fog belonged in the state of Delaware, those on board, whether passengers or crew, were in contemplation of law within the territory of that state, and hence an action for their wrongful death was governed by the Delaware laws.
[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 12.]

2. COLLISION—DEFENSES—JOINT TORT-FEASORS.
Where two vessels came into collision as the result of the joint negligence of both, they were joint tort-feasors, and the negligence of one was no defense to the liability of the other.
[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 237.]

3. MASTER AND SERVANT—INJURIES TO CREW—FELLOW SERVANTS.
Where two vessels came into collision as the result of excessive speed, maintained at the direction of the master, the latter represented the shipowner, so that the personal representatives of the subordinate officers and crew who were drowned in the collision were not precluded from a recovery on the ground that they were fellow servants of the master.
[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 492.]

4. SAME—FELLOW SERVANTS—PROXIMATE CAUSE.
The negligence of a fellow servant will not defeat an action for injuries, if it is not the sole cause of the accident.
[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 353.]

5. SHIPPING—COLLISION—LIMITATION OF OWNER'S LIABILITY—DEATH OF PASSENGERS AND CREW.
Where two vessels belonging to different owners came into collision as the result of fault on the part of both, and both owners brought proceedings in admiralty to limit their liability, a claim for damages was main-

tainable against both vessels by the personal representatives of the passengers and crew of both vessels who died as the result of the collision.

[Ed. Note.—Limitation of vessel owner's liability, see note to The Longfellow, 45 C. C. A. 387.]

6. SAME—CLAIMS.

Where, in a proceeding to limit the liability of the owners of certain vessels for damages resulting from the death of passengers and crew caused by a collision, the statutes of the state to which the vessels belonged created a right of action for death in the widow of the deceased person, a claim filed by M., "widow and executrix" of one of the persons killed in the collision, was sufficient; the allegation that she was executrix being mere descriptio personæ and surplusage.

7. SAME—AMENDMENT.

An amendment of the claim, so as to charge that petitioner claimed as widow, was not erroneous, as permitting the filing of a new cause of action.

## Appeals from the District Court of the United States for the Southern District of New York.

On appeal and cross-appeal from a decree of the District Court for the Southern District of New York, granting the petitions of the Old Dominion Steamship Company, owner of the steamship Hamilton, and of the Clyde Steamship Company, owner of the steamship Saginaw, for a limitation of their liability for damages arising out of a collision between said vessels in a dense fog, as a result of which the Saginaw sank, causing loss of life, injury to persons and damage to cargo. The District Court held both vessels in fault for running at excessive speed in a fog. Both vessels were owned by corporations created under the laws of Delaware and, as that state permits a recovery for loss of life, the District Court held that the claimants, representing the passengers and members of the crew who were drowned by the sinking of the Saginaw, were entitled to recover in the admiralty. The opinion of the District Judge, stating all the salient facts and citing the leading authorities bearing upon the questions debated, is reported in 134 Fed. 95.

A reference to fix the amount of damages was ordered but before the hearing by the commissioner all claims except those for loss of life were compromised and settled, and since the report one of these claims has been settled and withdrawn. The commissioner, after a careful and painstaking examination of the facts and law, sustained the claims and fixed the amount of damages. Exceptions being filed, the District Court reduced the award of damages in each instance and, as so modified, confirmed the report. The opinion of the District Judge setting out in full the report of Commissioner Goodrich is reported in 139 Fed. 906. The following table shows the names of the deceased persons, the amount of the claims as filed and the amounts allowed respectively by the commissioner and the court:

| Name. | Claim. | Commissioner. | Court. |
| --- | --- | --- | --- |
| Gilmore, passenger | $10,200 | $3,500 | $2,000 |
| Goslee, chief officer | 20,000 | 7,500 | 6,000 |
| Morris, chief steward | 15,000 | 4,500 | 3,000 |
| Swanson, passenger | 12,000 | 4,250 | 2,750 |
| Sarah Elam, stewardess | 15,000 | 2,500 | 1,500 |
| Page, cook | 8,100 | 4,250 | 3,000 |

The questions presented by this appeal are:

First. Does the Delaware statute apply to a claim for death on the high seas arising purely from tort?

Second. Can the representatives of the deceased members of the crew of the Saginaw recover their claims in full against the Hamilton?

Third. Had the court discretion to permit an amendment changing the capacity in which the claimants sued?

Fourth. Shall the awards made by the court be increased or reduced?

Harrington, Putnam and Henry E. Mattison, for appellant Old Dominion Steamship Company.

J. Parker Kirlin, Howard M. Long, and John M. Woolsey, for claimants Goslee, Morris, and Elam.

Arthur L. Fullman, for claimant Gilmore.

George W. Betts, Jr., for claimants Swanson and Lawson.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts). The three opinions, which have already been delivered in the course of this litigation, so fully and clearly state the facts and the law that little can be said by this court which is not a repetition of what appears in the Reports.

In International Nav. Co. v. Lindstrom, 123 Fed. 475, 60 C. C. A. 649, this court decided that the sovereignty of a state extends to the vessels of the state upon the high seas, and if the law of the state permits a recovery for damages occasioned by a tortious act the law is as applicable to said vessels on the high seas as when actually within the boundaries of the state.

In the recent case of La Bourgogne (C. C. A.) 139 Fed. 433, 439, we had occasion to reaffirm this doctrine as to death claims growing out of a collision in a fog on the high seas, the Bourgogne being sunk with great loss of life. The law of France permits a recovery in such circumstances and, in a proceeding to limit the liability of the owner, we held that the French law extended to and operated upon the Bourgogne in midocean.

We are informed that the Supreme Court has recently granted a certiorari in the Burgogne Case and, in view of the similarity of the questions involved, it is not improbable, should a petition for a writ be filed, that a similar course may be taken in the case at bar. We see no impropriety in saying that such a result would be gratifying to us.

The facts in hand, of course, are not identical with those in the cases cited, but we are of the opinion that they cannot be successfully distinguished because of these differences.

The right of action provided by the Delaware statutes is not founded on contract but on tort. "Whenever death shall be occasioned by unlawful violence or negligence" the personal representatives may maintain a suit in every case where the decedent could have maintained it had the injuries not resulted in death. Both vessels belonged to Delaware and those on board, whether passengers or members of the crew, were, in contemplation of law, within the territory of that state.

Assume that the Hamilton had negligently run into and sunk the Saginaw in the harbor of Wilmington, Del., causing the death of the persons in question, can there be a doubt that the claimants here would have a right of action at common law against the Old Dominion Company under the statute of that state? It would be no defense to such an action to show that the owner of the Saginaw was also negligent. One of two joint tort-feasors may not defend

an action against himself by showing that the other wrongdoer was equally responsible. Little v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652.

We do not see, either, how the question of negligence of a fellow servant could arise in such an action. The crew of the Saginaw were not fellow servants with the crew of the Hamilton and the persons who were drowned cannot be considered as fellow servants with the master of the Saginaw who, so far as that ship is concerned, was the only person at fault for her excessive speed. No case with which we are familiar has gone to the extent of holding that the captain of a vessel is a fellow servant with the cook, the stewardess and the other inferior members of the crew. A better illustration of the doctrine of alter ego can hardly be imagined. Goslee, the chief officer, was not negligent; what he did was under the direction of the master and it would be a dangerous doctrine to hold a subordinate guilty of fault for obeying the orders of his superior.

But assuming that the rule as to the negligence of a co-servant can be invoked where the action is against another vessel, it would seem that the common-law rule that the negligence of a co-servant does not defeat the action unless such negligence is the sole cause of the disaster is also applicable. No matter how much such negligence may contribute the defendant is not relieved if he himself be at fault. Grand Trunk Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266.

Were this action against the Saginaw, of course, a different rule would apply as to the members of the crew, but it is doubted whether the maritime law based upon the ancient Codes is applicable to the case at bar. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760.

There is no pretense that any one of the deceased persons was negligent and the finding that both vessels "were to blame" has been accepted by all. This is enough. We cannot doubt that had suits been brought for these deaths in the courts of Delaware the plaintiffs would have succeeded. By the action of the petitioners they are enjoined from prosecuting their claims in the home forum and are compelled to present them here.

Every consideration based on equity and natural justice impels us to hold that it was not the purpose of the limited liability act to enable vessel owners to force claimants into the admiralty, and thus avoid claims which are valid and enforceable at common law. The intent was to limit the liability, not to destroy it.

It is true that no contractual relation existed between the claimants' intestate and the Old Dominion Company or the Hamilton, but we see no reason, based on sound logic, why a passenger of the Hamilton should be permitted to recover for her negligence and a similar right be denied to the passengers of the Saginaw injured by the identical negligence.

As to members of the crew, although their legal status differs in many respects from that of the passengers, we are unable to perceive how any valid distinction can be drawn as to their contractual

relations to the ship which would permit the passengers to maintain an action against an outside vessel and deny that right to the crew. There is here no conflict of law as the statute invoked applies equally well to both vessels.

The claimants, representing innocent third parties in no way responsible for the collision either directly or by imputation, are entitled to recover the full amount of their damages. The fact that both ships were negligent does not change the rule, as the fault of the Saginaw cannot be imputed to persons who were wholly free from blame. The Atlas, 93 U. S. 302, 23 L. Ed. 863; The Juniata, 93 U. S. 337, 23 L. Ed. 930.

The claims of Sallie T. Morris and Mary Swanson were proper in the form in which they were originally filed. The objection is that the Delaware statute gives a right of action to the widow and that these claims were filed not by the widow but by the administratrix and that an amendment permitting the claim to be filed in the name of the widow presented a new cause of action which was barred by the Delaware statute of limitations.

In the Morris Case the opening statement of the verified claim is:

"I reside at 2415 East Main Street, Richmond, Virginia, and am the widow and executrix of William Morris."

In the Swanson Case the opening statement is:

"The claimant, Mary Swanson, administratrix of the estate and widow of Peter Swanson, deceased, alleges," etc.

Both claims state all the facts necessary to constitute a good cause of action. Grant that in each case the claimant might have rested with the allegation that she was the widow of the drowned person, the subsequent statement that she was also executrix was absolutely immaterial and might with perfect propriety have been disregarded as surplusage. It was merely descriptio personæ and was as innocuous as the statement "I reside at 2415 East Main Street." Where a pleading alleges two representative capacities, in one of which the claim may be successfully prosecuted, we know of no rule of construction which requires the court to select the other and thus defeat the claim in limine. The court would have been justified in disregarding the unnecessary averments, interpreting the claims as filed by the claimants in their capacity as widows, but for greater caution an amendment was permitted in each instance. That such an amendment was within the discretion of the court there can be no doubt. The Minnetonka (decided May 22, 1906), 146 Fed. 509.

As before stated all the facts were before the court showing that the claimants were both widows and administratrices and the amendment allowing them to say that they claimed as widows permitted no new cause of action, created no surprise and required no additional proof. Such amendments are being constantly granted and particularly so in the admiralty where the practice is much more liberal in this regard than in the courts of common law. We have examined the awards made by the court with greater care than would ordinarily be required because both parties are dissatisfied. We are

convinced that the amounts allowed by the District Court are fair and conservative and we see no reason for disturbing them.

We do not deem it necessary to pass upon all the questions presented upon this branch of the case or to express our approval or disapproval of all the reasons advanced by the commissioner and the judge in support of their respective findings; it suffices to say that upon the facts proved we are of the opinion that the amounts allowed by the final decree do substantial justice to the claimants.

The decree is affirmed with interest but without costs in this court.