## THE O'BRIEN BROTHERS.

(Circuit Court of Appeals, Second Circuit. May 14, 1919.)

No. 223.

1. COLLISION ⚖=99—FAULT OF TUG—LOOKOUT.
    A tug towing barges entering Hempstead Harbor was at fault for not maintaining a vigilant lookout to discover a drifting motorboat ahead, having no way on account of engine trouble; observers on bluffs several hundred feet from the scene of collision having been able to see all the vessels concerned with accuracy.

2. COLLISION ⚖=11, 71(3), 99—FAULT OF VESSEL AND OWNER. .
    Where the owner of a motorboat, without crew, having engine trouble, and with an anchor insufficient to hold her, though his attention was called by a passenger to the obvious danger of an approaching tug and her tow, merely went to his engine to make repairs, where he could not see overboard, he and his boat were not without fault in collision with the tug's tow, there being no legal distinction in respect to rules of navigation between pleasure vessels, those operated for profit, large and small boats, or those numerously manned or operated by one man only, and the motorboat was also at fault for maintaining no lookout.

3. COLLISION ⚖=144—CONTRIBUTORY NEGLIGENCE—HALF DAMAGES.
    Where the personal negligence of the owner of a motorboat contributed to collision with a tug and her tow, he can recover against the tug only half his damages.

4. COLLISION ⚖=144—CONCURRENT NEGLIGENCE OF VESSELS—RIGHTS OF PASSENGERS.
    Third persons injured by the concurrent negligence of two vessels, on one of which they are passengers, are not affected in their rights by the negligence of their vessel.

5. DEATH ⚖=99(4)—DAMAGES—AMOUNT—MARITIME ACCIDENT.
    Awards of $5,000 and $6,000, under Code Civil Proc. N. Y. § 1902 et seq., for death of two childless married women, when a tug collided with a motorboat belonging to the husband of one of them, held not excessive though the husband suing as administrator was guilty of negligence contributing to the collision.

Appeal from the District Court of the United States for the Eastern District of New York.

In the matter of the libel and petition of O'Brien Brothers, Incorporated, as owner of the steam tug O'Brien Brothers her engines, etc., for limitation of liability. On exceptions to awards for damages

---

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

caused by the death of two married women, the report of the Commissioners was affirmed (253 Fed. 855), and from the decree the petitioner appeals. Cause remanded, with directions to modify the decree as required.

See, also, 252 Fed. 185.

At dusk of July 28, 1906, with the weather fair, the tug O'Brien Bros. was entering Hempstead Harbor. She had a tow of three scows, two arranged tandem and put on the starboard side of the tug with the third outside the outer two, and also to starboard. This arrangement was chosen because the channel for vessels like the O'Brien Bros. is narrow and practicable only at high water, or nearly so. But the scows being light would float in water on the starboard side of the channel to which the tug was confined.

The foremost of the O'Brien's scows projected a considerable distance beyond the tug's bow, and a lookout was stationed at the forward end thereof. Running lights had been lit, but it was still so light that vessels in the harbor, even very small ones, were visible and easily watched from the bluffs which overlook and closely approach the shore of Hempstead Harbor.

As the tow was about to go through the narrow passage between Bar Beach and the other side of the harbor, the motorboat Zita, 30 feet long and drawing not over 2 feet, was starting from Bar Beach for Glen Cove, Long Island. She had barely gotten under way when her engine broke down. The only anchor she had was a sort of grapnel, weighing but 12 pounds, and, while efforts were being made to start up the engine, we find that the vessel drifted; for, though this small anchor was thrown out, it did not hold.

The crew of the Zita consisted of one man, her owner (Leyare), who (with his wife and four friends) was on board. As soon as the engine stopped, the owner devoted himself to the engine, which was under the deck of the boat. The Zita had no running lights, but there was a lantern hanging on the awning and a light, said to have been bright, in the galley. After the owner began to work on the engine, one of the passengers called his attention to the approaching tow, whereupon he said: "Let them come; there's lots of room." No further attention was paid to the tug and tow until collision was inevitable. The lookout on the tow did not see the motorboat, by his own testimony, until no more than about 30 feet separated the two vessels.

The Zita was caught under the rake of the head scow and turned over. The two women on board were drowned; the men suffered no serious injury, and swam to shore, which was less than a hundred feet distant.

The motorboat was somewhat injured, but, as the damages awarded show, not seriously.

Actions having been begun by the administrators of the deceased women against the owners of O'Brien Bros., this limitation proceeding was brought. The right to limit is not questioned here. The court below held the tug at fault in respect of navigation, exonerated the Zita, and awarded to one administrator $5,000 and interest and to the other $6,000 and interest. These amounts plus costs and small awards to the men including Leyare (for damage to Zita) do not quite exhaust the fund arising from the valuation of the O'Brien Bros., and her freight. The tug's owners appeal.

Foley & Martin, of New York City (George V. A. McCloskey and William J. Martin, both of New York City, of counsel), for appellant.

Edward B. Thomas, of Brooklyn, N. Y., for appellees.

Before WARD, HOUGH and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] We agree with the court below that the tug was at fault for not maintaining a vigilant and efficient lookout. It is plainly proven that observers on the bluffs, distant several hundred feet from the scene of disaster,

saw all the vessels concerned and were able to state with accuracy the circumstances of collision.

Appellants urge in excuse that the shadows of the high shores of the harbor rendered it easier to perceive what was going on from the top of the bluff, than from the low deck of the advancing scow. Neither the evidence nor general knowledge justifies the distinction; but, giving all the weight that can be claimed for it, we are still of opinion that any competent lookout could and should have seen the Zita and perceived that she was nearly still, long before the vessels were only a boat's length apart.

[2] We cannot, however, agree that the Zita was without fault. She had an apology for an anchor, yet could hardly be called an anchored vessel; she was assuredly not under control; yet the crew of one man, after having his attention called by a passenger to an obvious danger, did nothing but betake himself to his engine, where he could not see overboard. He acted as if the very smallness of his boat, or some privilege inherent in pleasure craft, entitled him to cast all the burdens of avoiding collision on the other vessel. There is no legal distinction in respect of the rules of navigation between vessels operated for pleasure and for profit, between large boats and small ones, or those with a numerous crew and those operated by one man. The Zita also was at fault for maintaining no lookout, and neglecting all the precautions incumbent upon her whether regarded as anchored or not under control.

[3] This finding of fact requires modification of the decree appealed from so far as it covers the claim of Leyare individually against the owners of the O'Brien Bros. The personal negligence of Leyare contributed to this disaster, and he can recover but half his damages, and against him are awarded the costs of this appeal.

[4] The foregoing, however, does not affect the rights of third parties who were injured by the concurrent negligence of two vessels, upon one of which they were passengers. The Hamilton, 146 Fed. 724, 77 C. C. A. 150, affirmed 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264.

[5] As stated above, one of the passengers was Leyare's wife. She was drowned, and Leyare as her personal representative has been awarded $6,000. The administrator of the other woman passenger has received $5,000.

Appellants insist that the evidence furnishes no basis for awards of this size, or indeed for any substantial recovery. The claims rest on the statutes of New York creating a cause of action for death by wrongful act (Code Civ. Proc. § 1902 et seq.), and the amount of recovery is (in the absence of a jury) "such a sum as * * * the court * * * deems to be a fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whose benefit the action is brought."

Both the decedents were women of mature years, married, living with their husbands, and performing the usual duties of housekeepers of families in moderate circumstances. Both were childless, and their surviving husbands are apparently the sole beneficiaries of whatever

recovery may be had herein. Under such circumstances, we think it so plain that the awards were reasonable in amount that no further discussion of the matter is necessary.

It is true that Leyare as administrator thus obtains a substantial recovery for the decease of his wife, to which his own personal negligence contributed. But as he sues in a representative capacity, it is the settled construction of the statutes above referred to that the individual negligence of one who claims in a representative capacity is not to be imputed even though the same person receives individually that for which he sues as representative. McKay v. Syracuse, etc., Co., 208 N. Y. 359, 101 N. E. 885; Braun v. Buffalo, etc., Co., 213 N. Y. 655, 107 N. E. 338.

The cause is remanded, with directions to modify the decree as hereinabove required. The claimants other than 'Leyare individually, who appeared by one counsel in this court, will recover one bill of costs on this appeal.