### THE FORT MORGAN.

(District Court, D. Maryland. July 22, 1921.)

No. 711.

1. Shipping ⏞132(3)—Owner, invoking protection of Harter Act, has burden of proof.

Where a steamship stranded through fault or negligence in navigation, to entitle the owner to the protection of Harter Act, § 3 (Comp. St. § 8031), it must be affirmatively shown that due care was exercised in the selection of the navigation officers and engine room force.

2. Shipping ⏞53—Breakdown clause held not to exempt ship from liability to charterer for damages to cargo from negligent stranding.

The breakdown clause in a charter party *held* not to exempt the ship from full liability for damage to cargo owned by the charterer, resulting from her stranding through fault or negligence in her navigation.

3. Shipping ⏞43—Ship held liable for late arrival to load bananas.

A ship *held* liable to the charterer for damage resulting from her late arrival at a wharf for loading bananas, due to delay caused by her negligent stranding, where it was shown that in accordance with the custom of the trade the bananas had been cut and were ready for loading.

In Admiralty. Suit by the Baltimore & Jamaica Trading Company against the steamship Fort Morgan. Decree for libelant.

John H. Skeen and J. M. Mullen, both of Baltimore, Md., for libelant.

Lee S. Meyer, of Baltimore, Md., for respondent.

ROSE, District Judge. [1] The Baltimore & Jamaica Trading Company, hereinafter called the "charterer," has libeled the steamship Fort Morgan for the value of 1,500 bunches of jettisoned bananas, and for the damage done by decay to many thousands more, all of which it says was the proximate result of the stranding of the ship. There is no doubt that she went ashore, and as little that her doing so was due to gross negligence in her engine room. As the fault was in her navigation or management, she sets up the Harter Act (Comp. St. §§ 8029–8035); but, in order that she may have its protection, she must affirmatively show that her owner exercised due diligence to

make her seaworthy. The Wildcroft, 201 U. S. 386, 26 Sup. Ct. 467, 50 L. Ed. 794.

The libel now before the court charged, among other things, that proper care had not been given to the selection of her engine room force. The record at least suggests that the skill and discipline of that portion of the ship's company left much to be desired. All the evidence that she offered on this vital point was that of one of the officials of her owner, who testified that her chief engineer was competent. How the witness knew that he was, or what inquiry, if any, had been made as to his fitness, was not stated, and not a word was said as to the capacity or reliability of his assistants, in the watch of one of whom the blunder seems to have been made. Such a showing falls far short of what was required to entitle her to the benefits of the act, and it therefore is unnecessary to inquire whether that statute has any application to the loss suffered by reason of her delay in taking on the portion of the cargo not on board at the time she went upon the strand.

[2] The charter contained the usual "breakdown" clause, and the ship contends that by it the parties have themselves fixed the measure of damage for the delay resulting from a breakdown, no matter how caused. She relies upon The Ask (D. C.) 156 Fed. 678. In that case it turned out that the libelant was not interested in the cargo, and suffered nothing by the damage to it. Under such circumstances, remission of charter hire for the period the ship was out of service was all that the charterer could ask. Judge Hough, moreover, pointed out that under the other facts in that case, had the charterer been the owner of the cargo, the ship could not have escaped with no greater liability than temporary loss of charter hire. In both The Craigallion (D. C.) 20 Fed. 747 (decided in this district by the late Judge Morris), and The George Dumois (D. C.) 88 Fed. 537, upon facts similar to those of the instant case, it apparently was not suggested that the breakdown clause in each of those charters limited the right of the charterer to recover all the damage proximately resulting from the ship's default.

[3] The ship further insists that a charterer may not recover for damage resulting from her delay in taking bananas on board, if they had been cut before the arrival at the wharf from which she was to take them, or in its immediate vicinity, whatever may be the law as to other kinds of losses. Upon the record before it, the Circuit Court of Appeals of this circuit some 30 years ago so held. The Curlew, 55 Fed. 1003, 5 C. C. A. 386. That decision was put upon the ground that the evidence showed that it was not the custom of the trade to cut the fruit before the ship was at or near the wharf. The ordinary rule of law that the shipper must have the cargo ready for the ship when she arrives, laid down in Postlewaite v. Freeland, L. R. 5 App. Cases, 620, and countless other cases, has little or no application when the ship is under time charter, for then waiting costs her nothing. Accordingly, in The Curlew it was held that unless there was a general usage, well known in the trade, to cut the fruit before the arrival of the ship, but at such time as would permit its being put on board of

her so soon as she made fast at her wharf, the shipper could not recover for the damage resulting from her not being on time. In that case there was express proof, not only that there was no such custom, but that the practice of the trade was to wait to cut until the ship was at her dock or in its neighborhood.

In the case at bar the uncontradicted evidence is all the other way. In the three decades which have elapsed since the Curlew was tardy, the trade usage has apparently altered. For many years past, every one has been in the habit of cutting the fruit a day or two before the ship in ordinary course will call for it, in order that it may be at the water side when she ties up. The witnesses make it clear why this is for all concerned the most convenient way of dealing with a problem which from any aspect is not without its difficulties. The ship seldom gets a full cargo at one port. Usually she has to gather it from half a dozen. If the bananas to be shipped from each of them are not cut until she gets to it, the time consumed in cutting them and in bringing them from the interior to the landing place will in the aggregate amount to many days, during which the fruit already on board will be suffering. The charter in this case was on the ordinary West Indian fruit form. Everybody knew she was to be used in the fruit trade, although the charterer had the right to employ her otherwise if it wished. Her owner was well aware that delay in keeping her schedule meant loss to the charterer. She should answer for the proximate consequences of her tardiness.

Opportunity will be given to the parties to be heard orally or by briefs, as they prefer, on the amount of the damages suffered by the charterer, as little or nothing has been heretofore said by the advocates on that subject, although the testimony concerning it has been taken.

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes