## THE MARION.

## THE HARRY LYNN.

## HODSON v. THE HARRY LYNN.

## TACOMA & ROCHE HARBOR LIME CO. v. THE MARION.

(District Court, D. Washington, N. D. June 7, 1893.)

### Nos. 577 and 578.

1. COLLISION—STEAM AND SAIL—LIGHTS—LOOKOUTS.

A schooner sailing at night in Puget sound was struck by a small steamer, which overtook her on the course. The schooner's side lights were not visible to the steamer, her binnacle torch was not lighted, and no sound signal was given, though the schooner's master knew of the steamer's approach. The steamer had no lookout except the helmsman. *Held*, that both vessels were in fault, and the damage should be divided.

2. SAME—LOOKOUTS.

The rule requiring a lookout admits of no exceptions, on account of size, in favor of any craft capable of committing injuries.

In Admiralty. Libels by John Hodson, master of the schooner Marion, against the steam tug Harry Lynn, and by the Tacoma & Roche Harbor Lime Company, owner of the Harry Lynn, against the schooner Marion, for damages caused by a collision between said vessels. Findings that both vessels were in fault, and damages divided.

Hughes, Hastings & Stedman, for the Marion.

Greene & Turner, for the Harry Lynn.

HANFORD, District Judge. The Marion, a three-masted schooner of 224 tons net tonnage, with a cargo of about 350,000 feet of lumber and piles, including her deck load, sailed from Port Blakely on the morning of October 25, 1892, bound for Newport, in the state of California. With a light northwest wind, her progress in Puget sound was slow. At 8 o'clock P. M., October 26th, she was off Point No Point, at which time she tacked, after which, and at about 8:45 P. M., when the collision occurred, she stood on her starboard tack, with all sails set, steering by the wind, and was going through the water at the rate of about half a mile per hour, but, with the set of a strong ebb tide, was making considerably greater headway toward Foul Weather bluff, which bore about one point off her starboard bow, with Point No Point bearing south-southeast and distant about one mile and a half. The moon had set, and at the time of the collision, at the place where it occurred, the atmosphere was clear, but there was a fog bank five or six miles ahead. The other vessel, a propeller of about 45 tons, left Seattle late in the afternoon, bound for Port Townsend and Roche Harbor, and overtook the Marion, and struck her a little forward of her main rigging, about 45 or 50 minutes after the Marion had passed Point No Point. After rounding said point, the steamer took a position and course which placed her on the port side of the Marion, and following her on an intersecting

course. The schooner's side lights were placed in her fore rigging, and were not visible from the steamer until too late to avoid the collision. This was so because, until the steamer rounded the point, they were obscured by distance, and afterwards, until she was less than 200 feet away, she was more than two points abaft the schooner's beam. There was a torch at the binnacle, ready for use, but it was not lighted, and no warning was given by sound, although the master and all the men on the deck of the Marion were aware of the presence of the Harry Lynn, and knew that they were being overtaken by her for at least 15 minutes before the collision. This neglect fastens responsibility for the collision upon the schooner. The excuses offered by Capt. Hodson are that he supposed that his port side light was visible from the steamer, and that it was in fact seen by her lookout; and that, on account of there being so many steamers and small craft afloat in Puget sound, it would require constant attention, and be too troublesome to give warning to every one of them coming within dangerous proximity. This last excuse is simply puerile, and merits no further comment; and the first amounts to an admission of an error which would not have been committed if the officers of the Marion had been as observing and prudent as the situation required. When the steamer approached within half a mile without hailing, they certainly had no reason for supposing that their vessel had been seen by those on board of her.

Collisions usually result from mutual faults, and this case is no exception. While the schooner failed to give notice of her position, and was not discernible for any considerable distance from the steamer on account of the fog bank serving as a background, still the latter vessel, being a steam propeller, easy to handle, quick to answer her helm, and being the overtaking vessel, ought to have kept clear of the Marion, and, in my opinion, could have done so, if there had been ordinary vigilance and skill in managing her. The fault on her part lies in the fact that she had at that time no lookout, except the helmsman, who was too much diverted by giving attention to the wheel and compass to make out the schooner as soon as she ought to have been discovered; the attention of the master, just previous to the collision, being directed to the comfort of a sick passenger.

There is no exception to the rule requiring a lookout in favor of craft capable of committing injuries, on account of size. Vessels of the class of the Harry Lynn must be held accountable for injurious collisions resulting from neglect to observe established rules of navigation. The damages will be divided, and the cases will be referred to a commissioner to ascertain and report the amount sustained by each vessel.