717 F.2d 752
 In the Matter of the Complaint of INTERSTATE TOWING CO., as
owner of the TUG DELAWARE, Interstate Marine Transport Co.,
as owner of the BARGE INTERSTATE 36, and Interstate and
Ocean Transport Co., as bareboat charterer of the barge
Interstate 36 and the tug Delaware, Plaintiffs, for
Exoneration from or Limitation of Liability.
INTERSTATE TOWING CO., as owner of the tug Delaware,
Interstate Marine Transport Co., as owner of the barge
Interstate 36 and Interstate and Ocean Transport Co., as
bareboat charterer of the barge Interstate 36 and the tug
Delaware, Plaintiffs,
Interstate and Ocean Transport Co., as bareboat charterer of
the barge Interstate 36 and the tug Delaware,
Plaintiff-Appellant,
v.
Barbara STISSI, Judith Lax and Thomas Furey, Claimants-Appellees.
 No. 1028, Docket 82-7901.
 United States Court of Appeals,
Second Circuit.
 Argued May 4, 1983.
Decided Sept. 22, 1983.
 
 James M. Hazen, New York City (McHugh, Leonard & O'Connor, New York City, on the brief), for plaintiff-appellant.
 Alvin L. Stern, Tampa, Fla. (Edward F. Gerace, P.A., Tampa, Fla., of counsel), for claimant-appellee Stissi.
 Lawrence B. Brennan, New York City (Kramer, Dillof, Tessel, Duffy & Moore, New York City, on the brief), for claimant-appellee Lax.
 David Holmes, Merrick, N.Y. (Curtis, Hart & Zaklukiewicz, Merrick, N.Y., on the brief), for claimant-appellee Furey.
 Before VAN GRAAFEILAND and PIERCE, Circuit Judges, and MISHLER, District Judge.*
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Sonat Marine, Inc., formerly Interstate and Ocean Transport Co., appeals from a judgment of the United States District Court for the Eastern District of New York (Nickerson, J.), entered on October 29, 1982. Appellant, the bareboat charterer of the tug Delaware and the barge Interstate 36, petitioned the court below for exoneration from, or limitation of, liability arising out of a collision which occurred on Long Island Sound on August 22, 1980.
 
 
 2
 Claimants against appellant include Thomas Furey, the owner of a small pleasure craft which collided with the barge, and Judith Lax and Barbara Stissi, representatives, respectively, of Ruth Calabro and Ronald Stissi, passengers in the Furey boat who were fatally injured in the collision. Appellant asserted counterclaims against all appellees. Appellee Lax asserted cross-claims against Furey and Stissi. In addition to asserting a claim, appellee Furey petitioned the district court for exoneration from, or limitation of, liability.
 
 
 3
 The court below denied appellant exoneration from liability, holding the tug and barge to be eighty percent at fault for the collision. The court also refused to limit appellant's liability to the value or amount of its interest in the vessels pursuant to 46 U.S.C. Sec. 183 (1976). The court attributed twenty percent of the fault to the Furey boat and denied Furey's petition for limitation of liability.
 
 
 4
 As a general rule, a trial court's estimate of the amount of negligence attributable to each vessel is subject to the clearly erroneous rule. Getty Oil Co. v. SS Ponce De Leon, 555 F.2d 328, 335 (2d Cir.1977). This assumes, however, that the court applied correct legal standards in making its determination. Master Shipping Agency, Inc. v. M.S. Farida, 571 F.2d 131, 133 (2d Cir.1978). If the court applied improper legal standards its conclusion may be corrected as a matter of law. United States v. Singer Mfg. Co., 374 U.S. 174, 194 n. 9, 83 S.Ct. 1773, 1784 n. 9, 10 L.Ed.2d 823 (1963). Viewing the district court's allocation of fault in that light, we conclude that it cannot stand. We affirm in part and reverse in part.
 
 
 5
 On August 22, 1980, at about 8:00 P.M., Mr. Furey, Mr. Stissi and Mrs. Calabro left a Huntington, Long Island marina in Furey's nineteen-foot, outboard motorboat to go fishing. The night was clear, the wind was moderate and the waves were from one to three feet high. With Furey operating his boat, the party went first to an area several miles north of the Huntington Harbor Lighthouse, where they fished for a short period of time. They then decided to try another spot some distance to the north, and the boat headed in that direction with Mr. Stissi at the controls.
 
 
 6
 Before reaching its intended destination, the motorboat encountered the Delaware. The tug was well lighted, showing a white bow light, port and starboard running lights, a white stern floodlight shining on a towing hawser, and some yellow deck lights. In addition, the Delaware had three white vertical mast lights, which indicated that it was "towing one or more vessels astern." 33 U.S.C. Sec. 173(a) (1976), repealed by Inland Navigational Rules Act of 1980, Pub.L. No. 96-591, Secs. 7, 8(a), 94 Stat. 3435 (1980). Despite the presence of the three mast lights and the floodlighted hawser, Stissi attempted to cross the Delaware 's wake and, in the process, fouled his propeller on the hawser. While Furey was attempting to free the propeller, the Interstate 36, which the Delaware was towing, caught up with the stopped boat and overturned it.
 
 
 7
 Where mast lights indicate the existence of a tow, it has been held to be "inexcusable negligence" to cross behind the stern of the towing vessel without knowing the position of the tow, The Norne, 59 F.2d 145, 148 (5th Cir.1932), and the " 'navigation', if it can be called such," of the crossing vessel has been described as "grossly at fault", In re Harbor Towing Corp., 310 F.Supp. 775, 782 (D.Md.1970), aff'd sub nom. Harbor Towing Corp. v. Aetna Ins. Co., 438 F.2d 535 (4th Cir.1971) (per curiam). See Triangle Cement Corp. v. Towboat Cincinnati, 280 F.Supp. 73, 75 (S.D.N.Y.1967), aff'd, 393 F.2d 936 (2d Cir.1968) (per curiam). The district court held that Stissi, as pilot of the Furey boat, was charged with knowledge of what the towing lights meant and the "lights should have alerted him to proceed with caution and to attempt, before he passed astern of the Tug, to ascertain where the towed vessel, if any, was located." Because of Stissi's failure to do so, the district court found him to be twenty percent at fault for the accident and Furey to be vicariously responsible for Stissi's fault.
 
 
 8
 It is the law of this Circuit that the mere presence on board of an owner does not constitute such privity as will preclude limitation of the owner's liability. Blackler v. Jacobus Transp. Co., 243 F.2d 733, 735 (2d Cir.1957) (per curiam); In re Klarman, 295 F.Supp. 1021, 1022-23 (D.Conn.1968); In re Liebler, 19 F.Supp. 829, 833 (W.D.N.Y.1937). To deny limitation to an owner, his "privity or knowledge must be actual and not merely constructive." In re Bloomfield Steamship Co., 422 F.2d 728, 736 (2d Cir.1970) (quoting The 84-H, 296 F. 427, 431 (2d Cir.1923), cert. denied, 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867 (1924)). "There must be some fault or negligence on his part or in which he in some way participates." Id. If the owner "is free from fault his actual knowledge of the facts of the accident does not prevent limitation." Blackler v. Jacobus Transp. Co., supra, 243 F.2d at 735.
 
 
 9
 Although the district court's opinion is somewhat confusing on this point, the fact that the court denied limitation of liability to Furey indicates that Furey's liability was not simply vicarious but was also based upon Furey's own personal acts of negligence. The district court found that the most plausible explanation for Stissi's running across the tow line was his ignorance of the significance of the tug's tow lights, and that Furey was negligent in permitting Stissi to operate the boat without knowing whether Stissi was familiar with the rules of navigation and maritime lighting. This was not mere vicarious negligence; it was Furey's own careless act. In re Theisen, 349 F.Supp. 737, 740-41 (E.D.N.Y.1972); Moye v. Henderson, 364 F.Supp. 1286, 1292 (E.D.Ark.1973), aff'd, 496 F.2d 973 (8th Cir.), cert. denied, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974); Nuccio v. Royal Indem. Co., 280 F.Supp. 468, 469 (E.D.La.1968), aff'd, 415 F.2d 228 (5th Cir.1969) (per curiam).
 
 
 10
 Moreover, Furey's negligent conduct did not cease when he placed Stissi at the helm of his boat. The rules of safe navigation, which apply to pleasure craft such as the one owned by Furey, The O'Brien Bros., 258 F. 614, 616 (2d Cir.1919), Bremmer v. Shedd, 467 F.Supp. 261, 266 (W.D.Pa.1979), In re Val Marine Corp., 145 F.Supp. 551, 554 (S.D.N.Y.1956), modified, 256 F.2d 911 (2d Cir.1958), In re Liebler, supra, 19 F.Supp. at 832-33, imposed a duty on Furey, a duty, which he failed to satisfy and which the district court failed to discuss, to see that a proper lookout was maintained from his boat at all times. "There is no exception to the rule requiring a lookout in favor of craft capable of committing injuries, on account of size." The Marion, 56 F. 271, 272 (D.Wash.1893). See In re H. & H. Wheel Service, Inc., 219 F.2d 904, 914 (6th Cir.1955); Petersen v. Head Constr. Co., 367 F.Supp. 1072, 1075, 1080 (D.D.C.1973); Dumatrait v. Tug Nick V, 212 F.Supp. 600, 602 (E.D.La.1962).
 
 
 11
 It is axiomatic that an "inefficient lookout is equivalent to none." Sun Oil Co. v. S.S. Georgel, 245 F.Supp. 537, 545 (S.D.N.Y.1965), aff'd, 369 F.2d 406 (2d Cir.1966) (per curiam). See The Robert H., Inc. v. The Socony No. 19, 162 F.2d 199, 200 (2d Cir.1947). A proper lookout is one that is vigilantly maintained by a competent person of suitable experience. Chamberlain v. Ward, 62 U.S. (21 How) 548, 570, 16 L.Ed. 211 (1859); Tug Ocean Prince, Inc. v. United States, 584 F.2d 1151, 1159-60 (2d Cir.1978), cert. denied, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979); In re Flota Mercante Grancolombiana, S.A., 440 F.Supp. 704, 715-17 (S.D.N.Y.1977), aff'd on opinion below, Dkt. Nos. 77-7256, -7278 (2d Cir. Nov. 16, 1977). The need for competent vigilance has prompted repeated holdings that a lookout's sole duty should be that with which he is charged and that one who is assigned the duties of helmsman is not a proper person to act as a lookout. Chamberlain v. Ward, supra, 62 U.S. at 571, 16 L.Ed. 211; Tug Ocean Prince, Inc. v. United States, supra, 584 F.2d at 1159-60; The Pilot Boy, 115 F. 873, 875 (4th Cir.1902).
 
 
 12
 We do not suggest that this rule should be applied in wooden fashion to small pleasure craft, some of which may have only a one-man crew. See Anthony v. International Paper Co., 289 F.2d 574, 579-80 (4th Cir.1961); Stevens v. United States Lines Co., 187 F.2d 670, 674-75 (1st Cir.1951). However, where, as here, an inexperienced pilot is placed at the helm at night with instructions to follow a set course by reference to a troublesome "bouncing" compass, the owner and master who sits idly by has not complied with the duty imposed upon him of keeping a proper lookout. 33 U.S.C. Sec. 221 (1976). Appellant concedes that neither he nor Mrs. Calabro undertook any of the duties of a lookout and that he never saw the Delaware before his boat struck the towing hawser. Under the circumstances, we conclude that he was guilty of substantial negligence, entirely separate and distinct from that which came vicariously from Stissi. In re H. & H. Wheel Serv., Inc., supra, 219 F.2d at 914-15; Chimene v. Dow, 104 F.Supp. 473, 477 (S.D.Tex.1952).
 
 
 13
 Although the absence of a proper lookout is equivalent to the violation of a statutory rule, Tug Ocean Prince, Inc. v. United States, supra, 584 F.2d at 1160, Martin Marine Transp. Co. v. Jakobson & Peterson, Inc., 135 F.2d 325, 328 (2d Cir.1943), there is no need to rely upon the doctrine of The Pennsylvania, 86 U.S. (19 Wall) 125, 136, 22 L.Ed. 148 (1874)[1], in order to find that the violation was a cause of the accident. If the Furey boat had observed and heeded the section 173 mast lights which warned that the Delaware had a vessel in tow, it is patently clear that the accident would not have happened. See Mystic Steamship Corp. v. M/S Antonio Ferraz, 498 F.2d 538, 541 (2d Cir.1974). The same cannot be said of the violations charged against the tug and barge.
 
 
 14
 The district court found that the Delaware violated section 84.10 of the Pilot Rules, 33 C.F.R. Sec. 84.10 (1980), now 33 C.F.R. Sec. 163.10 (1982), by using a tow line 1,000 feet in length. That section provides that tow lines shall be no longer than 450 feet, unless in the opinion of the master of the towing vessel "it is dangerous or inadvisable whether on account of weather or sea or otherwise" to so limit them. Although the master of the Delaware testified that "[d]ue to sea conditions and wind" he decided to use a longer line, the district court held that the master had not made a good faith effort to arrive at a correct decision. In reaching this conclusion, the district court relied specifically on the fact that, following the accident, the tug master reduced the length of the hawser to 400 feet. Assuming that the district court did not err prejudicially in relying on "after an event" measures, but see Cann v. Ford Motor Co., 658 F.2d 54, 59-60 (2d Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982), and Fed.R.Evid. 407, it is not at all clear, as a practical matter, that the length of the tow had anything to do with the collision.
 
 
 15
 The argument against the use of long tows is based primarily on loss of maneuverability and control. See Mystic Steamship Corp. v. M/S Antonio Ferraz, supra, 498 F.2d at 542; The Fred B. Dalzell, Jr., 1 F.2d 259, 263 (2d Cir.1924). Where, as here, the tug and barge maintained a straight and proper course, it may be that the length of the tow had nothing to do with the collision. Mystic Steamship Corp. v. M/S Antonio Ferraz, supra, 498 F.2d at 542; The Scow No. 27, 164 F.2d 778, 780 (4th Cir.1947); The Hamilton, 212 F. 1016, 1020 (E.D.Va.1914). We believe the district court erred in applying the doctrine of The Pennsylvania to the Rule 84.10 violation because Rule 84.10 does not delineate a precise and clearly defined duty, but, instead, calls for the use of interpretation and judgment on the part of the master. See In re Marine Sulphur Queen, 460 F.2d 89, 98 (2d Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 326, 34 L.Ed.2d 246 (1972). Even if the district court was correct in holding that the hawser length "may well have been a factor contributing to the accident," the district court was incorrect in not factoring in the failure of the Furey boat to observe and to heed the Delaware 's lights warning of a tow, a failure which, in pre-comparative negligence days, might have barred recovery altogether under the doctrine of last clear chance. Mystic Steamship Corp. v. M/S Antonio Ferraz, supra, 498 F.2d at 542-44; The Cornelius Vanderbilt, 120 F.2d 766, 768 (2d Cir.1941); Crawford v. Indian Towing Co., 240 F.2d 308, 310-12 (5th Cir.1957), cert. denied, 353 U.S. 958, 77 S.Ct. 865, 1 L.Ed.2d 909 (1957).
 
 
 16
 The district court was clearly correct in holding that, although the barge carried port and starboard running lights, appellant nonetheless violated former section 80.17 of the Pilot Rules for Inland Waterways, former 33 C.F.R. 80.17 (1980), now in substance Inland Navigation Rule 24, 33 U.S.C.A. Sec. 2024 (Supp.1982), by failing to have a white light on the barge's bow. However, once again, this omission cuts two ways. Having been warned of the existence of the tow, the Furey vessel was duty bound not to proceed across the Delaware 's wake without first ascertaining the position of the tow, The Norne, supra, 59 F.2d at 148, and the inability to perceive the whereabouts of the tow should have emphasized the need for greater caution on the part of those in control of the Furey boat.
 
 
 17
 Although the district court also found the tug at fault for failure to have a proper lookout, as we have already pointed out, it did not even mention the word "lookout" when discussing the fault of the Furey boat. Moreover, since the Delaware and its barge could not maneuver to avoid the collision, the absence of a proper lookout went mainly to the tug's failure to whistle. The district court held that, had the tug seen the motorboat sooner, it could have given an "appropriate" warning that "might" have averted the accident. The district court found that the master of the tug did not see the Furey boat until some ten seconds before it struck the hawser at which time the boat was almost astern of the tug. The court held that, even then, the master was clearly obligated to blow the whistle, apparently concluding that this would have given Stissi and Furey adequate time in which to recognize that there was danger, what the danger was and where it lay, so that they could have taken the steps necessary to avoid it. The district court also found that the master had at least forty-five seconds after the Furey boat fouled the hawser to blow the whistle again. If he had, said the district court, the occupants of the Furey boat "might have changed course, restarted the engine, or even jumped overboard [fully clothed, we assume] and swum to safety." Although no one can say with absolute certainty what "might" have happened, these latter conjectures do not furnish staunch underpinnings for the district court's allocation of fault.
 
 
 18
 In summary, after carefully reviewing the evidence, we are left with the definite and firm conviction that the district court erred in apportioning eighty percent of the fault to the tug and barge and only twenty percent to the Furey boat. See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Gele v. Chevron Oil Co., 574 F.2d 243, 249 (5th Cir.1978). This error, we believe, was caused, at least in part, by the district court's erroneous legal holding that "Furey's fault is derived from that of Stissi," and that the tug and barge "had a far heavier burden of proof than that imposed on Stissi whose only fault was that he probably did not recognize the significance of the lights on the tug."
 
 
 19
 We affirm that portion of the judgment which denies exoneration and limitation of liability, but remand to the district court for reconsideration of the apportionment of fault consistent with the provisions of this opinion.
 
 
 
 *
 District Judge of the Eastern District of New York, sitting by designation
 
 
 [1]
 In The Steamship Pennsylvania v. Troop, 86 U.S. (19 Wall) 125, 136, 22 L.Ed. 148 (1874), the Supreme Court held:
 The liability for damages is upon the ship or ships whose fault caused the injury. But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute.